IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, <br><br>　　　Plaintiff, <br><br>v. <br><br>SMALL SMILES HOLDING CO., LLC, <br><br>　　　Defendant. | Case No._____ <br><br>JURY DEMAND |

## COMPLAINT

Plaintiff, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), by and through its attorneys, Bass, Berry & Sims PLC and Sedgwick, Detert, Moran & Arnold LLP, as and for its Complaint against defendant Small Smiles Holding Company, LLC ("SSHC" or "Defendant"), alleges upon knowledge as to its own acts and upon information and belief as to the acts of others, as follows:

### NATURE OF THE ACTION

1.　This is an action brought pursuant to 28 U.S.C. §§ 2201 and 2202 for a declaration of the parties' rights and obligations under certain policies of liability insurance issued by National Union to SSHC (the "Policies", as defined in greater detail below in paragraph 10 of this Complaint).

2.　National Union seeks a declaration that it may rescind the Policies due to the failure by, or on behalf of, SSHC to disclose material information that increased the risk of loss under the Policies.

3.　In the alternative, if the Court does not permit National Union to rescind the Policies, National Union seeks reformation of each of the Policies to reflect the true intent of the parties thereto.

As set forth below, the Declarations and policy language to each of the Policies contain ministerial errors that are the product of mutual mistake and distort the true and actual intent of the parties as respects certain aspects of the coverage set forth in the Policies.

## PARTIES

4. National Union is a corporation organized and existing under the laws of Pennsylvania, with a principal place of business located in New York. National Union is engaged in the business of providing insurance.

5. SSHC is a corporation organized and existing under the laws of Delaware, with a principal place of business in Tennessee. SSHC, through a wholly-owned subsidiary named FORBA Holdings, LLC ("New FORBA"), provides dental practice management services for the Small Smiles Centers, a chain of 50 or more pediatric dental clinics located in at least 22 states that focus on providing dental services to children eligible for dental care under Medicaid and/or the applicable State Child Insurance Program.

## JURISDICTION AND VENUE

6. SSHC is seeking defense and indemnity from National Union under the Policies for, *inter alia*, a putative federal class action lawsuit in which the plaintiffs are seeking in excess of $5,000,000. SSHC and National Union are considered to be citizens of different states because SSHC is incorporated in Delaware and has a principal place of business in Tennessee while National Union is incorporated in Pennsylvania and has a principal place of business in New York. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

7. This Court has personal jurisdiction over SSHC either generally – insofar as it is conducting business within Tennessee, *see* Tenn. Code Ann. § 20-2-225(2) – or specifically, pursuant to Tenn. Code Ann. § 20-2-214(a). Upon information and belief, SSHC transacts business in Tennessee and the Policies were purchased to cover persons, properties, and/or risks located in, among other places, Tennessee.

8. Subjecting SSHC to personal jurisdiction in Tennessee does not violate its due process rights and comports with requirements of fair play and substantial justice.

9. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the alleged events or omissions giving rise to the claim occurred in this district and SSHC is subject to personal jurisdiction here.

## FACTS COMMON TO ALL CLAIMS

**A.  The Policies**

10. National Union issued the following Policies to SSHC:

(a) Dentists Liability Policy No. DNU3375848 for the policy period September 26, 2008 through September 26, 2009 (the "08/09 Entities Policy");

(b) Dentists Liability Policy No. DNU3375848 for the policy period September 26, 2009 through September 26, 2010 (the "09/10 Entities Policy") (the 08/09 Entities Policy and the 09/10 Entities Policy are collectively referred to herein as the "Entities Policies");

(c) Dentists Liability Policy No. DNU6360128 for the policy period December 1, 2008 through December 1, 2009 (the "08/09 Individual Dentists Policy"); and

(d) Dentists Liability Policy No. DNU6360128 for the policy period December 1, 2009 through December 1, 2010 (the "09/10 Individual Dentists Policy") (the 08/09 Individual Dentists Policy and the 09/10 Individual Dentists Policy are collectively referred to herein as the "Individual Dentists Policies").

3

The Entity Policies and the Individual Dentists Policies sometimes are referred to herein collectively as the "Policies" and individually as a "Policy". Certified copies of the 08/09 Entities Policy, 09/10 Entities Policy, the 08/09 Individual Dentists Policy, and the 09/10 Individual Dentists Policy are annexed hereto as, respectively, Exhibits "1," "2," "3" and "4."

11. SSHC is the First Named Insured on each of the Policies.

12. SSHC is a holding company that owns a dental practice management business and manages a number of affiliated dental practices and dentists that specialize in providing dental services to children ("the Small Smiles Centers").

13. SSHC solicited and obtained the Policies on behalf of the insureds described in each of the Policies, including SSHC, its subsidiaries, the Small Smiles Centers, and the dentists and employees who worked at the Small Smiles Centers.

14. Each of the Policies, subject to the conditions, exclusions and limitations contained therein, generally affords Professional Liability Coverage, inclusive of a defense and indemnity, to that Policy's insureds for covered "damages" because of a qualifying "dental incident."

**B.     The Underwriting of the Policies**

15. On information and belief, before it obtained the Policies, SSHC had obtained professional liability insurance for itself, its subsidiaries, and the Small Smiles Centers from The American Insurance Company ("American Insurance").

16. In or about July 2008, SSHC's insurance broker for professional liability insurance was a subsidiary of Aon Corporation named Affinity Insurance Services, Inc. doing business as Dentist's Advantage ("Affinity") ("the Dentist's Advantage Program"). Affinity's Irvine, California office was formerly known as Pro-Plus Insurance Brokers.

17. In or about July or August of 2008, SSHC authorized Affinity to obtain professional liability insurance to replace its expiring policies that American Insurance had not renewed based on claims experience.

18. Affinity subsequently informed SSHC that it would obtain professional liability insurance from National Union to replace the American Insurance expiring policies.

19. Between May 2008 and the present, Affinity was and is authorized by National Union to underwrite and issue dental professional liability insurance policies for National Union through the Dentist's Advantage Program within certain limits of authority and, in certain cases, subject to a requirement that Affinity submit its proposed issuance of insurance policies to certain larger-sized insureds to National Union for its approval prior to the issuance of such policies.

20. Affinity underwrote and placed the 08/09 Entities Policy and the 08/09 Individual Dentists Policy with National Union for the benefit of its client SSHC.

21. When the 08/09 Entities Policy and the 08/09 Individual Dentists Policy expired, Affinity underwrote and placed the 09/10 Entities Policy and the 09/10 Individual Dentists Policy with National Union for the benefit of its client SSHC.

**C.** **SSHC Failed to Disclose Material Information To National Union During the Underwriting and Issuance of the Policies**

   **i.** **SSHC Failed to Disclose Its Knowledge of Numerous Problems with the Quality of Dental Care Provided by the Small Smiles Centers When They Were Managed by Old FORBA**

22. SSHC, through its wholly-owned subsidiary, New FORBA, brought an action in the United States District Court for the District of Colorado captioned FORBA Holdings, LLC v. LICSAC, LLC, No. 09-cv-02305, in which it filed an Amended Complaint, dated January 22, 2010 (the "New FORBA v. Old FORBA Complaint"), against the previous owners of its dental practice management business ("Old FORBA") for, among other things, breach of indemnification obligations allegedly owed to New FORBA.

5

23. In the New FORBA v. Old FORBA Complaint, New FORBA alleged that it was aware of numerous problems with the Small Smiles Centers' ability to provide appropriate care to patients when Old FORBA managed these centers. Among other things, New FORBA alleged that Old FORBA had a practice of "pressuring dentists to produce in order to inflate revenues".

24. New FORBA alleged in the New FORBA v. Old FORBA Complaint that when Old FORBA managed the Small Smiles Centers, it lacked "policies, procedures, or quality control measures to promote appropriate standards of care at the Small Smiles facilities", and that the Small Smiles Centers, when managed by Old FORBA, had "a culture . . . that emphasized production over quality care, in clear contravention of the Applicable Laws and accepted standards of dental care."

25. These systemic problems that New FORBA alleged existed at the Small Smiles Centers when managed by Old FORBA clearly indicated that New FORBA believed that, under the management of Old FORBA, the Small Smiles Centers had a history of failing to adhere to accepted standards of dental care and, therefore, increased the risk of loss under the Policies. Yet, at no time prior to the issuance of the Policies did SSHC disclose to National Union its knowledge of these systemic problems with the Small Smiles Centers when they were managed by Old FORBA.

26. SSHC had a duty to disclose its knowledge of these systemic problems with the Small Smiles Centers (when they were managed by Old FORBA) to National Union, but failed to do so.

 **ii.** **SSHC Failed to Disclose the Fact That It, Its Subsidiaries, the Small Smiles Centers and Small Smiles Individual Dentists Were the Target of a Massive Government Investigation Into Medicaid Fraud**

27. By no later than late 2007, SSHC and New FORBA learned that New FORBA and the Small Smiles Centers were the subject of a nationwide investigation by the United States government and the governments of several states. The investigating agencies included the Department of Justice ("DOJ"), the United States Department of Health and Human Services ("HHS") and several United States Attorney's offices. This investigation, upon information and belief, focused on various forms of

6

alleged misconduct by SSHC, its subsidiaries, the Small Smiles Centers and the Small Smiles individual dentists, including Medicaid fraud and a pattern and practice of subjecting pediatric dental patients to unnecessary dental procedures ("the Medicaid Fraud Investigation").

28. In the New FORBA v. Old FORBA Complaint, New FORBA admitted that it learned "in late 2007 . . . that it . . . and the Small Smiles Centers were the subject of a nationwide government investigation", i.e., the Medicaid Fraud Investigation.

29. SSHC knew or should have known that the Medicaid Fraud Investigation was likely to subject SSHC, its subsidiaries, the Small Smiles Centers and the Small Smiles individual dentists to increased exposure to professional liability claims and increased the likelihood that such claims would be brought against them.

30. SSHC did not disclose the existence of the Medicaid Fraud Investigation to National Union prior to the initial issuance of the Policies in 2008 and then again in 2009 in connection with the Policies' renewal in 2009. The existence of the Medicaid Fraud Investigation increased the risk of loss under the Policies.

31. SSHC had a duty to disclose the existence of the Medicaid Fraud Investigation to National Union, but failed to do so.

### iii. SSHC Failed to Disclose the Fact That It Had Made Multiple Claims Arising From the Medicaid Fraud Investigation to Its Prior Professional Liability Insurance Carrier, The American Insurance Company

32. In the winter and spring of 2008 – that is, before the inception of the Policies – SSHC submitted multiple notices to its then professional liability insurance carrier, American Insurance, advising that SSHC was aware of circumstances that could reasonably be expected to lead to a claim under the American Insurance policies and/or seeking defense costs under those policies (the "American Insurance Tenders").

33. In the American Insurance Tenders, SSHC informed American Insurance that SSHC, its Tennessee headquarters and at least the following Small Smiles Centers, including individual Small Smiles dentists, were subject to the Medicaid Fraud Investigation by governmental authorities, including HHS, the Colorado State Board of Dental Examiners, the Maryland State Board of Dental Examiners, the State of Colorado Office of Investigations and/or the Attorneys General of the States of Maryland, Massachusetts and Oklahoma:

    (a)    Children's Dental Clinic of Oklahoma City;

    (b)    Small Smiles of Baltimore, P.C.;

    (c)    Small Smiles of North Baltimore, P.C.;

    (d)    Small Smiles of Langley Park, P.C.;

    (e)    Small Smiles of Oxon Hill, P.C.;

    (f)    Small Smiles of South Baltimore, P.C.;

    (g)    Small Smiles Clinic of Springfield, LLC;

    (h)    Small Smiles Clinic of Lawrence, LLC;

    (i)    Small Smiles of Aurora;

    (j)    Small Smiles of Colorado Springs; and

    (k)    Small Smiles of Thornton.

34. In one of the American Insurance Tenders, a tender made by SSHC dated February 7, 2008, SSHC stated that "Small Smiles hereby gives notice pursuant to the terms of your respective insurance policies that Small Smiles is aware of circumstances that may reasonably be expected to lead to a claim under your policy."

35. The existence and/or content of the American Insurance Tenders demonstrate that SSHC knew that SSHC, its subsidiaries, the Small Smiles Centers and the Small Smiles individual dentists had

an increased exposure to professional liability claims and that they increased the risk of loss under the Policies.

36. SSHC did not disclose the existence of the American Insurance Tenders to National Union prior to the initial issuance of the Policies in 2008 and then again in 2009 in connection with the Policies' renewal in 2009. The existence and/or content of the American Insurance Tenders increased the risk of loss under the Policies.

37. SSHC had a duty to disclose the existence of the American Insurance Tenders to National Union, but failed to do so.

### iv. SSHC Failed to Disclose the Fact That American Insurance Had Not Renewed Its Professional Liability Insurance Policy For Claims Experience Prior to the Inception of the Policies

38. On July 10, 2008, SSHC's prior professional liability insurance, American Insurance, mailed SSHC a notice nonrenewing its policy effective September 26, 2008.

39. In its Notice of Nonrenewal of Insurance to SSHC, American Insurance stated that one of the reasons for its non-renewal of its policy was "claims experience" (the "Claims Experience Nonrenewal").

40. SSHC knew or should have known that the Claims Experience Nonrenewal indicated that SSHC, its subsidiaries, the Small Smiles Centers and the Small Smiles individual dentists had an increased exposure to professional liability claims and that it increased the risk of loss under the Policies.

41. SSHC did not disclose the Claims Experience Nonrenewal to National Union prior to the initial issuance of the Policies in 2008 and then again in 2009 in connection with the Policies' renewal in 2009. The existence and/or content of the Claims Experience Nonrenewal increased the risk of loss under the Policies.

9

42. SSHC had a duty to disclose the existence of the Claims Experience Nonrenewal to National Union, but failed to do so.

### v. SSHC Failed to Disclose Its Indemnification Demands to the Previous Owners of Its Dental Practice Management Entities for the Small Smiles Centers

43. According to the New FORBA v. Old FORBA Complaint, New FORBA requested contractual indemnification on March 21, 2008 from Old FORBA for losses caused by multiple state and federal investigations into its business practices. SSHC knew or should have known that these investigations and the losses that SSHC was sustaining as a result indicated that SSHC, its subsidiaries, the Small Smiles Centers and the Small Smiles individual dentists had an increased exposure to professional liability claims and that they increased the risk of loss under the Policies.

44. According to the New FORBA v. Old FORBA Complaint, New FORBA requested contractual indemnification on June 24, 2008 from Old FORBA for losses arising from the falsified credentialing of certain employees and affiliated dentists. SSHC knew or should have known that these losses indicated that SSHC, its subsidiaries, the Small Smiles Centers and the Small Smiles individual dentists had an increased exposure to professional liability claims and that they increased the risk of loss under the Policies.

45. According to the New FORBA v. Old FORBA Complaint, New FORBA requested contractual indemnification on September 4, 2008 from Old FORBA for losses caused by a civil RICO suit filed against New FORBA and its affiliates, and from a search warrant executed at one of the Small Smiles Centers in Tucson, Arizona. SSHC knew or should have known that these losses indicated that SSHC, its subsidiaries, the Small Smiles Centers and the Small Smiles individual dentists had an increased exposure to professional liability claims and that they increased the risk of loss under the Policies.

46.     According to the New FORBA v. Old FORBA Complaint, New FORBA requested contractual indemnification on September 24, 2008 from Old FORBA for losses caused by state and federal investigations of Small Smiles centers in Arizona, Colorado, Georgia, Idaho, Indiana, Kansas, Maryland, Massachusetts, Nebraska, New Mexico, New York, Oklahoma, Ohio, South Carolina, Virginia and Washington, D.C. dating back to 2002.  SSHC knew or should have known that these numerous investigations and these losses indicated that SSHC, its subsidiaries, the Small Smiles Centers and the Small Smiles individual dentists had an increased exposure to professional liability claims and that they increased the risk of loss under the Policies.

47.     According to the New FORBA v. Old FORBA Complaint, on March 11, 2009, New FORBA provided an update on its earlier claims notices to Old FORBA.  New FORBA alleged that it informed Old FORBA that an investigation by the Georgia Department of Community Health determined that the State of Georgia made overpayments, from 2005 through 2007, in the amount of $408,199.51, of which at least $290,749 was for services rendered during the time when Old FORBA managed the Georgia Small Smiles clinics.  New FORBA alleged that it was forced to pay the State of Georgia $216,216 for amounts that the State of Georgia claimed were improperly paid to the Georgia centers during Old FORBA's management.  In the New FORBA v. Old FORBA Complaint, New FORBA alleged that Old FORBA had denied New FORBA's claim for indemnification and refused to indemnify New FORBA for payments made by the latter to the State of Georgia.  SSHC knew or should have known that these losses indicated that SSHC, its subsidiaries, the Small Smiles Centers and the Small Smiles individual dentists had an increased exposure to professional liability claims and that they increased the risk of loss under the Policies.

48.     According to the New FORBA v. Old FORBA Complaint, in its March 11, 2009 letter to Old FORBA, New FORBA also noted that the New York Office of Medicaid Inspector General ("OMIG") had asserted that the State of New York had overpaid Small Smiles of Syracuse an amount

11

between $1,300,233 and $1,632,080 for the time period January 1, 2005 through December 31, 2006 and during 21 of the 24 months covered by OMIG's audit, the Syracuse center was managed by Old FORBA. SSHC knew or should have known that these losses indicated that SSHC, its subsidiaries, the Small Smiles Centers and the Small Smiles individual dentists had an increased exposure to professional liability claims and that they increased the risk of loss under the Policies.

49. According to the New FORBA v. Old FORBA Complaint, on November 13, 2009, New FORBA notified Old FORBA that the New York OMIG had asserted an estimated overpayment to Small Smiles of Rochester in the amount of $200,347, covering the time period January 1, 2006 through December 31, 2007. SSHC knew or should have known that these losses indicated that SSHC, its subsidiaries, the Small Smiles Centers and the Small Smiles individual dentists had an increased exposure to professional liability claims and that they increased the risk of loss under the Policies.

50. According to the New FORBA v. Old FORBA Complaint, New FORBA had agreed to pay the State of New York $2.3 million to resolve the audit findings from the Syracuse and Rochester centers for periods prior to September 26, 2006 and that Old FORBA denied New FORBA's claim for indemnification and refused to indemnify New FORBA for the payments made by the latter to New York. SSHC knew or should have known that these losses indicated that SSHC, its subsidiaries, the Small Smiles Centers and the Small Smiles individual dentists had an increased exposure to professional liability claims and that they increased the risk of loss under the Policies.

51. SSHC did not disclose to National Union the existence and nature of the requests by it and New FORBA for contractual indemnification from Old FORBA before any of the Policies were issued and then renewed.

52. The existence and bases of SSHC's requests for contractual indemnification from Old FORBA increased the risk of loss under the Policies.

53. SSHC had a duty to disclose the existence of SSHC's requests for contractual indemnification from Old FORBA to National Union, but failed to do so.

    **vi.    SSHC Failed to Disclose the Qui Tam Actions**

54. A *qui tam* action, captioned <u>United States ex rel. McDaniel v. FORBA Holdings LLC</u>, No. 07-3416 (D. Md.), was filed against New FORBA and another SSHC affiliate, Small Smiles of Langley, P.C. (the "Maryland *Qui Tam* Action") on or about December 21, 2007.

55. The Maryland *Qui Tam* Action alleged that New FORBA and Small Smiles of Langley, P.C. had conspired to bill Medicaid for unnecessary dental procedures.

56. A *qui tam* action, captioned <u>United States of American and Commonwealth of Virginia ex rel. Angela Crawford v. Small Smiles of Roanoke LLC</u>, Case No. 7:08-cv-00370 (W.D. Va.), was filed against New FORBA, another SSHC subsidiary, two Small Smiles Centers, and several individual dentists on June 12, 2008 (the "Virginia *Qui Tam* Action").

57. The Virginia *Qui Tam* Action alleged that the named defendants had, *inter alia*, conspired to bill Medicaid for the unnecessary, but routine, administration of nitrous oxide to patients; frequently allowed unqualified personnel to administer nitrous oxide; performed intensive dental procedures that were not medically necessary; and routinely falsified medical records.

58. A *qui tam* action, captioned <u>John J. Haney o/b/o United States of America v. Children's Medicaid Dental of Columbia, LLC d/b/a "Small Smiles"</u>, Case No. 3:08-CV2562 (D.S.C.), was filed against Children's Medicaid Dental of Columbia, LLC, d/b/a "Small Smiles" on July 16, 2008 (the "South Carolina *Qui Tam* Action").

59. The South Carolina *Qui Tam* Action alleged that Children's Medicaid Dental of Columbia, LLC had, *inter alia*, pressured its dentists "to perform unnecessary or questionable medical procedures on pediatric patients"; "allowed non-certified dental assistants to administer and monitor

nitrous oxide inhalation conscious sedation" in violation of South Carolina Law; and "allowed non-certified dental assistants to perform x-rays on patients."

60. The allegations in the Maryland *Qui Tam* Action, the Virginia *Qui Tam* Action, and the South Carolina *Qui Tam* Action (collectively, the "*Qui Tam* Actions"), individually and collectively, indicated that SSHC, its subsidiaries, and the Small Smiles Centers had an increased exposure to professional liability claims.

61. The existence of and allegations contained in the *Qui Tam* Actions increased the risk of loss under the Policies.

62. Upon information and belief, when SSHC authorized Affinity to obtain and/or renew the Policies, it knew that the *Qui Tam* Actions, had been filed and that SSHC, its subsidiaries, the Small Smiles Centers and the Small Smiles individual dentists were likely to face increased exposure to professional liability claims.

63. SSHC did not disclose to National Union the existence and allegations of the *Qui Tam* Actions to National Union before any of the Policies were issued and then renewed.

64. SSHC had a duty to disclose the existence and allegations of the *Qui Tam* Actions to National Union, but failed to do so.

**D.    Claims Under the Policies**

65. On January 25, 2010, SSHC and New FORBA were sued in a putative class action entitled Parnell et al. v. FORBA Holdings, LLC et al. currently pending in the United States District Court, Northern District of Ohio, Western Division, under Civil Action No.: 10-CV-00172 (JGC) (the "Parnell Action").

66. SSHC has placed National Union on notice of the Parnell Action and is seeking coverage, including defense and indemnity, with respect to that action under the Policies.

14

Case 3:10-cv-00743    Document 1    Filed 08/05/10    Page 14 of 20 PageID #: 14

67. Subsequently, on June 7, 2010, SSHC and New FORBA were sued in a putative class action entitled <u>Hernandez et al. v. FORBA Holdings, LLC et al.</u> currently pending in the District Court of Oklahoma County, State of Oklahoma, under Case No. CJ-2010-1632 (the "Hernandez Action").

68. SSHC has placed National Union on notice of the Hernandez Action and is seeking coverage, including defense and indemnity, with respect to that action under one or more of the Policies.

69. On information and belief, SSHC is seeking coverage or intends to seek coverage under one or more of the Policies for other claims as well.

### E. The Intent of the Policies as Respects Limits of Insurance

70. During the underwriting of each of the Entities Policies, and prior to the issuance of the same, the parties understood and agreed that the purpose of each of the Entities Policies was to afford coverage for covered "damages" because of a qualifying "dental incident" for certain corporate and/or business entities, or related owners, officers, directors and shareholders, only, with respect to their "dental business," and not as to covered "damages" because of a qualifying "dental incident" for individual dentists with respect to their "dental business," to which the Individual Dentists Policies respond.

71. During the underwriting of each of the Entities Policies, and prior to the issuance of the same, the parties understood and agreed that the limits of insurance under each of the Policies would be $5,000,000 per "dental incident" for all insureds collectively, subject to a $6,000,000 collective aggregate limit for all such insureds.

72. During the underwriting of the Individual Dentists Policies, and prior to the issuance of the same, the parties understood and agreed that the purpose of each of the Individual Dentists Policies was to afford coverage for covered "damages" because of a qualifying "dental incident" for individual dentists, only, with respect to their "dental business," and not for covered "damages" because of a

15

qualifying "dental incident" for corporate and/or business entities, and related owners, officers, directors and shareholders, with respect to their "dental business," to which the Entities Policies respond.

73. During the underwriting of each of the Policies, and prior to the issuance of the same, the parties understood and agreed that Section IV. Limits of Insurance, Paragraph D. contained in each Policy applies to "dental incidents" and not "medical incidents."

## FIRST CLAIM FOR RELIEF
### (Rescission as to All Policies)

74. National Union incorporates by reference each of the allegations of paragraphs 1 through 69, inclusive, of this Complaint as if fully set forth herein.

75. SSHC had a duty to disclose to National Union all information known to SSHC that was material to the risks SSHC sought to insure under the Policies.

76. SSHC did not disclose material information to National Union known to SSHC that increased the risk of loss of the risks that SSHC sought to insure under the Policies.

77. SSHC's failures to disclose material information to National Union were made with an actual or imputed intent to deceive and/or the material information SSHC failed to disclose increased the risk of loss to National Union under the Policies.

78. National Union would not have issued the Policies to SSHC had SSHC disclosed the material facts set forth above at the time SSHC sought to obtain or renew insurance coverage from National Union. By failing to disclose this crucial information to National Union, SSHC deprived National Union of the information it needed to make an informed choice as to whether to issue the Policies to SSHC.

79. Wherefore, National Union is entitled to a declaration that SSHC's failures to disclose material information entitles National Union to rescind and make void *ab initio* each of the Policies.

16

## SECOND CLAIM FOR RELIEF

### (Reformation of the Entities Policies)

80. National Union incorporates by reference each of the allegations of paragraphs 1 through 21 and 65 through 73, inclusive, of this Complaint as if fully set forth herein.

81. Neither National Union nor SSHC intended that the Entities Policies would provide coverage for covered "damages" because of a qualifying "dental incident" for individual dentists with respect to their "dental business."

82. Neither National Union nor SSHC intended that the Entities Policies would provide no coverage per "dental incident" and in the aggregate to corporate and/or business entities, or related owners, officers, directors and shareholders, for covered "damages" because of a qualifying "dental incident" with respect to their "dental business."

83. To the extent that the limits of liability and associated descriptions for the Entities Policies are identified in the Declarations thereto as "$5,000,000" for "Each Dental Incident per Individual Named Insured Dentist Limit" and "$6,000,000" for "Individual Named Insured Dentist Aggregate Limit," the foregoing limits and descriptions are incorrect, the product of a mutual mistake and do not reflect the true and actual intent of the parties.

84. To the extent that the limits of liability and associated descriptions for the Entities Policies are identified in the Declarations thereto as "None" for "Each Dental Incident All Other Insureds Combined Limit" and "None" for "All Other Insureds Aggregate Limit," the foregoing limits and descriptions are incorrect, the product of a mutual mistake and do not reflect the true and actual intent of the parties.

85. To the extent that Section IV. Limits of Insurance, Paragraph D. of the Entities Policies states that: "Subject to Paragraphs A. B., and C. above, all 'claims' arising from one 'medical incident' or a series of related 'medical incidents' to any one person shall be deemed to have occurred at the time

17

of the first 'medical incident' regardless of the number of claimants, or the number of insureds against whom such claims are made"; all references to "medical incident" throughout the quoted section are incorrect, the product of mutual mistake and do not reflect the true and actual intent of the parties because the parties intended that the section apply to a "dental incident" and not a "medical incident."

86. Wherefore, National Union respectfully requests that, in the absence of rescission, this Court reform the Declarations for the Entities Policies in accordance with the true and actual intent of the parties to read "None" for "Each Dental Incident per Individual Named Insured Dentist Limit" and "None" for "Individual Named Insured Dentist Aggregate Limit."

87. Wherefore, National Union respectfully requests that, in the absence of rescission, this Court reform the Declarations for the Entities Policies in accordance with the true and actual intent of the parties to read "$5,000,000" for "Each Dental Incident All Other Insureds Combined Limit" and "$6,000,000" for "All Other Insureds Aggregate Limit."

88. Wherefore, National Union respectfully requests that, in the absence of rescission, this Court reform Section IV. Limits of Liability, Paragraph D. of the Entities Policies in accordance with the true and actual intent of the parties to read: "Subject to Paragraphs A. B., and C. above, all 'claims' arising from one 'dental incident' or a series of related 'dental incidents' to any one person shall be deemed to have occurred at the time of the first 'dental incident' regardless of the number of claimants, or the number of insureds against whom such claims are made."

### THIRD CLAIM FOR RELIEF

**(Reformation of the Individual Dentists Policies)**

89. National Union incorporates by reference each of the allegations of paragraphs 1 through 21 and 65 through 73, inclusive, of this Complaint as if fully set forth herein.

90. To the extent that Section IV. Limits of Insurance, Paragraph D. of the Individual Dentists Policies states that: "Subject to Paragraphs A. B., and C. above, all 'claims' arising from one

18

'medical incident' or a series of related 'medical incidents' to any one person shall be deemed to have occurred at the time of the first 'medical incident' regardless of the number of claimants, or the number of insureds against whom such claims are made"; all references to "medical incident" throughout the quoted section are incorrect, the product of mutual mistake and do not reflect the true and actual intent of the parties because the parties intended that the section apply to a "dental incident" and not a "medical incident."

91. Wherefore, National Union respectfully requests that, in the absence of rescission, this Court reform Section IV. Limits of Liability, Paragraph D. of the Individual Dentists Policies in accordance with the true and actual intent of the parties to read: "Subject to Paragraphs A. B., and C. above, all 'claims' arising from one 'dental incident' or a series of related 'dental incidents' to any one person shall be deemed to have occurred at the time of the first 'dental incident' regardless of the number of claimants, or the number of insureds against whom such claims are made."

**WHEREFORE**, Plaintiff National Union demands judgment as follows:

1. On the First Claim for Relief, declaring that National Union is entitled to rescind each of the Policies and that each of the Policies is accordingly void *ab initio*;

2. In the alternative, if National Union does not prevail on its First Claim for Relief, on the Second Claim for Relief, reforming the Entities Policies to read: a) "None" for "Each Dental Incident per Individual Named Insured Dentist Limit," and "None" for "Individual Named Insured Dentist Aggregate Limit" as stated in the Declarations; b) "$5,000,000" for "Each Dental Incident All Other Insureds Combined Limit" and "$6,000,000" for "All Other Insureds Aggregate Limit" as stated in the Declarations; and c) "Subject to Paragraphs A. B., and C. above, all 'claims' arising from one 'dental incident' or a series of related 'dental incidents' to any one person shall be deemed to have occurred at the time of the first 'dental incident' regardless of the number of claimants, or the number of insureds against whom such claims are made" as stated in Section IV. Limits of Liability, Paragraph D.

3. In the alternative, if National Union does not prevail on its First Claim for Relief, on the Third Claim for Relief, reforming the Individual Dentists Policies to read "Subject to Paragraphs A. B., and C. above, all 'claims' arising from one 'dental incident' or a series of related 'dental incidents' to any one person shall be deemed to have occurred at the time of the first 'dental incident' regardless of the number of claimants, or the number of insureds against whom such claims are made" as stated in Section IV. Limits of Liability, Paragraph D.

4. Plaintiff demands trial by jury on all issues so triable.

5. For such other and further relief as the Court deems just and equitable.

**DATED** this 5th day of August, 2010.

Respectfully submitted,

**BASS, BERRY & SIMS PLC**

By: /s/ W. Brantley Phillips, Jr.
W. Brantley Phillips, Jr.
150 Third Avenue South, Suite 2800
Nashville, TN 37201
(615) 742-6200

John C. Speer
100 Peabody Place, Suite 900
Memphis, TN 38103-3672
(901) 543-5900

*Attorneys for National Union Fire Insurance Company of Pittsburgh, PA*

**Of Counsel:**

Lawrence Klein
Scott D. Greenspan
**SEGDWICK, DETERT, MORAN & ARNOLD LLP**
125 Broad Street, 39th Floor
New York, NY 10004
Phone: (212) 422-0202