UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:10-00743 Judge Campbell |
| SMALL SMILES HOLDING CO., LLC, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM

In this declaratory judgment action under 28 U.S.C. § 2201, Plaintiff National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") has filed a "Motion to Dismiss" Defendant Small Smiles Holding Co., LLC's ("SSHC's") Counterclaim (Docket No. 31). That Motion has been fully briefed by the parties. (Docket Nos. 32, 44 & 50). The Motion to Dismiss is granted with respect to Count II of the Counterclaim, but denied with respect to Count I of the Counterclaim.

## I. FACTUAL BACKGROUND

This litigation involves four dental professional liability insurance policies which were issued by National Union to SSHC in 2008 and 2009. National Union seeks to rescind or reform those policies because, prior to the issuance of the policies, SSHC allegedly failed to disclose facts that were material to the risks insured, thereby increasing the risk of loss to National Union.

According to the Complaint, SSHC owns a dental practice management business and manages a chain of 50 or more affiliated dental practices and dentists in at least 22 states. SSHC obtained the polices at issue on behalf of itself, its wholly owned subsidiary FORBA Holdings, LLC ("FORBA"), the Small Smiles Centers, and the dentists and employees working at the Small Smiles Centers. The

1

Small Smiles Centers specialize in providing dental services to children eligible for dental care under Medicaid, or similar state programs.

In essence, National Union alleges that, in seeking the policies, SSHC knew, but failed to disclose, numerous problems concerning the quality of dental care provided by the dentists and employees working at the Small Smiles Centers. Such alleged omissions included the fact that the Small Smiles Centers and their employees were the targets of numerous state and federal investigations and *qui tam* actions alleging Medicaid fraud, and a pattern and practice of subjecting pediatric dental patients to medically unnecessary dental procedures. SSHC also allegedly knew, but failed to disclose to National Union, that SSHC had made multiple insurance claims and indemnification demands arising from those investigations to its prior insurance carrier, and that the prior carrier failed to renew the policies because of its claims experience with SSHC. National Union contends that had it known of SSHC's litigation problems and past claims history, it would not have issued the policies at issue.

SSHC denies National Union's allegations and claims that National Union, through its agent, was fully aware of the investigations and claims. SSHC has filed a two-count Counterclaim. In Count I, SSHC alleges that, in initiating this lawsuit, National Union has engaged in unfair or deceptive practices under the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 *et seq.* In Count II, SSHC alleges that National Union refused to honor its insurance contracts in violation of Tenn. Code Ann. § 56-7-105. In support, SSHC alleges the following:

Beginning with its inception in 2006 and into 2007, SSHC purchased dental professional liability insurance for itself, its subsidiaries, and employees from Affinity Insurance Services, Inc.'s ("Affinity's") Dentist's Advantage Program. The insurance provided by Affinity was issued on behalf of American Insurance Company and/or its parent, Fireman's Fund Insurance Company ("Fireman's Fund"). While the Fireman's Fund policies were in effect, SSHC learned of, and responded to, a series

2

of investigations initiated by the federal government and certain state agencies which alleged FORBA and some of the Small Dental Centers wrongfully submitted claims for dental services under Medicaid and the State Children's Health Insurance Program. SSHC alleges that it promptly notified Affinity of those investigations and provided Affinity with copies of all subpoenas and investigative documents and demands.

In 2008, Affinity's relationship with Fireman's Fund ended. Affinity then entered into a contract with National Union under which, allegedly, Affinity served as National Union's agent and partner, and provided underwriting, billing, claims, and other services on National Union's behalf.

In July 2008, Affinity notified SSHC that its contract with Fireman's Fund had ended and that SSHC's dental professional liability policies would not be renewed when they were set to expire in September 2008. However, Affinity offered to renew the policies with AIG through AIG's affiliate National Union, and indicated that there would be no changes in coverage or procedures, and that there would be a "smooth" transition to the new carrier. Affinity further indicated that it would notify SSHC of the new premiums once those figures were worked up with National Union. During the transition, SSHC was not required to complete any policy applications to obtain coverage from National Union, or requested to provide any further information about the ongoing investigations. Once the policies were in place, SSHC paid all of the premiums and complied with all requirements of the Policies with National Union.

While the policies at issue were in place, two class actions were filed against SSHC and its insureds.[1] Upon learning of those actions, SSHC provided notice of the litigation in keeping with the notification requirements of the policies. Also during the period of the policies at issue, SSHC learned

---

[1] The first, styled Parnell v. FORBA Holdings, LLC, No. 10-CV-00172 was filed in the Northern District of Ohio. The second was filed in state court in Oklahoma and styled Henandez v. FORBA Holdings, LLC, No. CJ-2010-1632.

of other claims and potential claims against it and its insureds and notified National Union about those claims and potential claims.

## II. **STANDARD OF REVIEW**

In deciding the Motion to Dismiss the Counterclaim for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), the Court must view the Counterclaim in the light most favorable to the Defendant, accepting all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009). Although Fed. R. Civ. P. 8(a)(2) requires merely "a short and plain statement of the claim," Defendant must allege enough facts to make the Counterclaim plausible. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). That is, Defendant must plead well enough so that his Counterclaim is more than "a formulaic recitation of the elements of a cause of action." Id. at 555.

## III. **ANALYSIS**

Because this matter is before the Court on a Motion to Dismiss, the material properly considered is limited. While the parties rely on extraneous materials not mentioned in the Counterclaim and letters which admittedly are only "obliquely referenced," (Docket No. 50 at 8), and while both parties object to each other relying upon such extraneous materials, the Court can only properly consider the Counterclaim, the exhibits attached thereto, and the exhibits attached to the Motion to Dismiss insofar as they are referenced in the Counterclaim and are central to SSHC's claims. Amini v. Oberlin College, 259 F.3d 493, 502 (6th Cir. 2001).

As indicated, SSHC's Counterclaim has two components, an alleged violation of the TCPA and a bad faith refusal to settle. National Union raises specific arguments related to each, but also argues that the Counterclaim must be dismissed in its entirety because it alleges fraud and fraud has not been pled with sufficient specificity. Since the lack of specificity argument is potentially

4

dispositive as to both causes of action, the Court addresses that argument first.

**A. Fed. R. Civ. P. 9(b)**

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake," although "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). While "Rule 9(b) adds additional pleading requirements for allegations of fraud or mistake, . . . it should not be read to defeat the general policy of 'simplicity and flexibility in pleadings' contemplated by the Federal Rules." United States *ex rel.* Snapp, Inc. v. Ford Motor Co., 532 F.3d 496, 503 (6th Cir. 2008)(citation omitted).

The Sixth Circuit "interpret[s] 'Rule 9(b) as requiring plaintiff to allege the time, place and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" Bennett v. MIS Corp., 607 F.3d 1076, 1100 (6th Cir. 2010)(citation omitted). So long as the pleader pleads these matters in "sufficient detail . . . to allow the defendant to prepare a responsive pleading, the requirement of Rule 9(b) will generally be met." United States *ex rel.* Snapp, 532 F.3d at 504.

Here, SSHC's Counterclaim meets the requirements of Rule 9(b). SSHC alleges that (1) upon receiving word of the various investigations it promptly provided notice to Affinity; (2) in 2008 it was informed by Affinity (now National Union's agent) that the insurance coverage would "smoothly" transition to coverage by National Union; (3) during the transition to National Union and thereafter no request was made for any further information about the ongoing investigations; (4) upon learning of the Parnell and Hernandez class actions it promptly gave notice as required under the policies and sought coverage, defense, and indemnity with respect to those actions; and, (5) in instituting this suit, National Union is seeking to avoid its contractual obligations based upon the false and fraudulent

5

contention that National Union and/or its agent Affinity had not been informed of the governmental investigations. (Counterclaim ¶¶ 6-22). These allegations are sufficient to allow National Union to prepare a responsive pleading and defend against a fraud claim based on those allegations.

**B. TCPA Claim, Tenn. Code Ann. § 47-18-101 *et seq.***

The TCPA was enacted

> "to protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce . . ., [t]o encourage and promote the development of fair consumer practices; [and] . . . [t]o declare and to provide for civil legal means for maintaining ethical standard of dealing between persons engaged in business and the consuming public to the end that good faith dealings between buyers and sellers at all levels of commerce be had in this state[.]

Tenn. Code Ann. § 47-18-102. The statute is remedial in nature and hence it "is to be liberally construed to protect consumers and others from those who engage in deceptive acts or practices." Morris v. Mack's Used Cars, 824 S.W.2d 538, 540 (1992).

To further its remedial goals, the TCPA in its present formulation lists almost fifty acts or practices which are prohibited because they are deemed to be unfair or deceptive. Tenn. Code Ann. § 47-18-104(b). Among the enumerated items is a catch-all provision which prohibits "engaging in any other act or practice which is deceptive to the consumer or to any other person." Id. § 47-18-104(b)(27). The Tennessee Supreme Court has held that the TCPA applies to the acts or practices of an insurance company, Myint v. Allstate Ins. Co., 970 S.W.2d 920, 925-26 (Tenn. 1998), including the handling of a claim. Gaston v. Tenn. Farmers Mut. Ins. Co., 120 S.W.3d 815, 822 (Tenn. 2003).

In moving to dismiss the Counterclaim, National Union argues its motion "presents a simple question to this Court: can an insured (SSHC) sue its insurer (National Union) for having filed a good faith lawsuit seeking to rescind the insured's policies even as the insurer is defending the insured in accordance with those policies pending this Court's determination on whether the policies may be

6

rescinded?" (Docket No. 32 at 1). In presenting the question that way, National Union takes as a given things that have yet to be established, most notably that this action was, in fact, brought in good faith, and that National Union is defending SSHC in accordance with the policies. The very essence of SSHC's Counterclaim alleges just the opposite. SSHC is claiming that National Union brought this action based upon allegations which are fundamentally false.[2]

In light of the allegations and the present posture of this case, the decision in Nautilus v. The In Crowd, 2005 WL 2671252 (M.D. Tenn. 2005) is not "directly on point," or "controlling," as National Union contends. (Docket No. 32 at 16). In Nautilus, the court was presented with a situation in which the insurance company provided a defense for the insured on the underlying claim, paid a settlement while expressly reserving the right to contest coverage, and filed a declaratory judgment action to have the Court determine coverage. Id. at *5. On that record, and further because the insured failed to establish any facts which might support an inference of an attempt to deceive and failed to provide briefing which explained how the insurer acted unfairly, the court found dismissal of the TCPA Counterclaim appropriate.

Here, SSHC's position is that National Union acted unfairly and in bad faith in filing a lawsuit which National Union knew was based upon facts which are simply untrue. In its response papers, SSHC further states that there was a nefarious reason for that tactic – "to 'pile on' an already litigation-weary insured, all in an attempt to gain additional negotiation leverage over SSHC" and coerce a settlement in the underlying litigation. (Docket No. 44 at 13). Further, SSHC questions whether "National Union has actually spent the first dime to assist in SSHC's defense of the underlying

---

[2]Of course, SSHC's arguments are not facts which are to be accepted as true (any more than National Union's assertion that this action is brought in good faith). Those arguments do, however, suggest a reason for filing the Counterclaim and raise the question as to whether National Union's request for rescission or reformation is brought in good faith.

7

lawsuits." (Id. at 7).[3]

Nautilus stands for the proposition that an insured cannot maintain a TCPA claim against an insurer based solely on the fact that an insurer has filed a traditional declaratory judgment action to determine the terms of coverage under a policy. However, when the allegations in the Counterclaim are construed in SSHC's favor as they must be for present purposes, SSHC has pled allegations suggesting that National Union's filing is far from a routine declaratory judgment action. Those allegations are sufficient to state a plausible claim for relief under the TCPA, and include the elements: (1) that National Union engaged in an "unfair or deceptive act" through its filing an allegedly baseless lawsuit to avoid its contractual obligations; and (2) that National Union "caused an ascertainable loss of money or property," to include the fees SSHC is required to spend to defend this litigation and to obtain coverage under the policies. See, Tucker v. Sierra Builders, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2003)(setting forth elements of a TCPA claim); see, Rothberg v. Cincinnati Ins. Co., 2008 WL 833201 at *8 (E.D. Tenn. 2008)("When an insurer denies a claim based on information it knows to be false, that supports a claim under the TCPA"). Accordingly, the Court finds dismissal of the TPCA Counterclaim is unwarranted based upon the present record.

## C. Bad Faith Refusal To Honor Insurance Contract, Tenn. Code Ann. § 56-7-105

So far as relevant, Tenn. Code Ann. § 56-7-105 provides:

> The insurance companies of this state, . . . in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy . . . on which the loss occurred, shall be liable to pay the holder of the policy . . . a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that the failure to pay inflicted

---

[3] In this regard, even if the Court were to consider National Union's reservation of right letters to SSHC, those letters do not prove that National Union is, in fact, providing the defense required under the policies, and, more importantly, do not address the issue of whether National Union filed this action while allegedly aware that the underlying basis of the Complaint – SSHC's alleged deception – was false.

8

> additional expense, loss, or injury including attorney fees upon the holder of the policy . . .; and provided, further, that the additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury including attorney fees thus entailed.

Tenn. Code Ann. § 56-7-105(a). "Because this statute is penal in nature, it must be 'strictly construed.'" Schmitz v. Allstate Ins. Co., 2010 WL 3655892 at *3 (E.D. Tenn. 2010)(citation omitted).

"In order to recover bad faith penalties under this statute, a plaintiff must prove: '(1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith.'" Ginn v. American Heritage Life Ins. Co., 173 S.W.3d 433, 443 (Tenn. Ct. App. 2004). Further, in pleading a cause of action under T.C.A. § 56-7-105, the pleader "must plead facts tending to show a formal demand was made" and this "entails [an] explicit threat of bad faith litigation" if the demand is not met. Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co., 590 F.Supp. 2d 970, 975 (M.D. Tenn. 2008).

In this case, even construing the allegations of the Counterclaim in SSHC's favor, SSHC has failed to sufficiently plead a cause of action under Tenn. Code Ann. § 56-7-105. The Counterclaim is bereft of any allegation that it made a formal demand on National Union which was coupled with an explicit threat of bad faith litigation. Indeed, while SSHC relies upon a letter sent by counsel to National Union (not referenced in the Counterclaim), that letter falls far short of making an explicit threat of bad faith litigation, and merely states that National Union's actions "raise serious questions about the manner in which it is adjusting Small Smiles' claims." (Docket No. 45-2 at 2). Further, while SSHC alleges that it sought defense and indemnity on the underlying claims, and while it further alleges that National Union has sought rescission of the policies, SSHC does not allege that National

Union has denied the claims, which is an essential element of a bad faith claim under Tenn. Code Ann. § 56-7-105. See, Life Ins. Co. of N. America v. Simpson, 2009 WL 2163498 at *3 (W.D. Tenn. 2009). Accordingly, the Counterclaim will be dismissed insofar as it alleges a violation of T.C.A. § 56-7-105.

## IV. **CONCLUSION**

On the basis of the foregoing, National Union's Motion to Dismiss (Docket No. 31) SSHC's Counterclaim will be denied insofar as SSHC alleges a cause of action under the TCPA (Count I), but granted insofar as SSHC alleges a cause of action for bad faith under Tenn. Code Ann. § 56-7-105 (Count II).

_Todd Campbell_
Todd J. Campbell
United States District Judge