UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., <br><br> Plaintiff, <br><br> v. <br><br> SMALL SMILES HOLDING CO., LLC, <br><br> Defendant/Third-Party Plaintiff, <br><br> v. <br><br> AFFINITY INSURANCE SERVICES, INC. <br><br> Third-Party Defendant. | Case No. 3:10-00743 <br> Judge Campbell |

## MEMORANDUM

Pending before the Court is Third-Party Defendant Affinity Insurance Services, Inc.'s ("Affinity's") Partial Motion to Dismiss (Docket No. 55). Third-Party Plaintiff Small Smiles Holding Co. LLC ("SSHC") has filed a response in opposition (Docket No. 69), to which Affinity has replied (Docket No. 73). The Partial Motion to Dismiss is granted with respect to the negligent misrepresentation claim, but denied with respect to the claim brought under the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 *et seq.*

## I. FACTUAL BACKGROUND

The factual allegations underlying this litigation were reviewed in some detail in this Court's prior ruling (Docket No. 53) on Plaintiff National Union Fire Insurance Company's ("National Union's") Motion to Dismiss. The Court will not reiterate those facts, but will instead summarize the facts which are necessary to understand the parties' arguments relating to the Third-Party

1

Complaint.

National Union filed suit to rescind or reform four dental professional liability insurance policies issued by it to SSHC in 2008 and 2009 because SSHC allegedly failed to disclose facts that were material to the risks insured. Specifically, SSHC allegedly failed to disclose that the dental practices it operates were targets of numerous state and federal investigations and *qui tam* actions alleging Medicaid fraud; that its dentists subjected pediatric dental patients to medically unnecessary dental procedures; and that it had made multiple insurance claims and indemnification demands arising from those investigations to its prior insurance carrier which caused the prior carrier to refuse to renew the policies.

SSHC denies National Union's allegations and claims that National Union, through its agent Affinity, was fully aware of the investigations and claims. SSHC filed a Counterclaim against National Union, as well as a Third-Party Complaint against Affinity. In the Third-Party Complaint, SSHC sets forth claims against Affinity for negligence, negligent misrepresentation, and unfair or deceptive practices under the TCPA based upon the following factual allegations:

From its inception in 2006, SSHC purchased dental professional liability insurance through Affinity's Dentist's Advantage Program. Initially, the insurance provided by Affinity was issued on behalf of Fireman's Fund Insurance Company ("Fireman's Fund"). While the Fireman's Fund policies were in effect, SSHC learned of, and responded to, a series of investigations by governmental agencies and promptly notified Affinity of those investigations. (Docket No. 38, Third-Party Complaint ¶¶ 10-13).

When Affinity ended its relationship with Fireman's Fund in the spring of 2008, Affinity entered into a contract with National Union under which, allegedly, Affinity served as National

Union's agent and partner. In July 2008, Affinity notified SSHC that its contract with Fireman's Fund had ended and that SSHC's dental professional liability policies would not be renewed with Fireman's Fund. (Id. ¶¶ 14-15). However, Affinity stated that it would renew the coverage with its new partner National Union, and indicated that there would be no changes in coverage or procedures, and that the "transition to the new coverage will be very smooth." (Id. ¶ 16).

During the transition to National Union, SSHC was not required to complete any policy applications to obtain coverage or requested to provide any further information about the ongoing investigations. (Id. ¶19). Once the policies were in place, SSHC paid all of the premiums and complied with all requirements of the policies with National Union. (Id. ¶ 20).

While the National Union policies were in place, two class actions were filed against SSHC and its insureds. Upon learning of those actions, SSHC provided notice of the litigation in keeping with the notification requirements of the policies. Also during the period of the policies at issue, SSHC learned of other claims and potential claims against it and its insureds and notified National Union about those claims and potential claims. (Id. ¶¶ 21-26).

SSHC styles its Third-Party Complaint against Affinity as an "alternative pleading." (Id. ¶ 27). That is, SSHC seeks to recover from Affinity "in the event the Court were to find for National Union and rescind the Policies[.]" (Id.).

## II. STANDARD OF REVIEW

In deciding the Motion to Dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), the Court must view the Third-Party Complaint in the light most favorable to SSHC, accepting all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009). Although Fed. R. Civ. P. 8(a)(2) requires merely "a short and

3

plain statement of the claim," SSHC must allege enough facts to make the claims in the Third-Party Complaint plausible. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). That is, SSHC must plead more than "a formulaic recitation of the elements of a cause of action." Id. at 555.

### III. ANALYSIS

As indicated, SSHC's Third-Party Complaint contains three counts. Affinity seeks to dismiss Count II which alleges negligent misrepresentation, and Count III which alleges a violation of the TCPA.

### A. Count II – Negligent Misrepresentation

"To succeed on a claim of negligent misrepresentation, a plaintiff must establish that '(1) the defendant supplied information to the plaintiff; (2) the information was false; (3) the defendant did not exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiably relied on the information.'" Int'l Mkt. & Rest. v. Belmont Univ., 2010 WL 4514980 at *3 (Tenn. Ct. App. Nov. 9, 2010)(citations omitted). "Furthermore, Tennessee courts require that the false information consists of statements of a material past or present fact[.]" Id.

Affinity argues that SSHC's negligent misrepresentation claim fails because there is no allegation of a false statement and the statements referenced in the Third-Party Complaint relate to future events. In this regard, Affinity argues that "[t]he gravamen of [the] negligent misrepresentation claim is Affinity employee Daniela Tonolla's email" to SSHC about the transition to new coverage in which she "writes that there 'will be no changes in coverage or procedures' and opines that the transition to National Union 'will be very smooth.'" (Docket No. 56 at 6, citation omitted). Affinity notes that these statements are not pled as being false and, in any event, they are

4

nothing more than opinions about future events.

SSHC argues that Affinity reads the Third-Party Complaint too narrowly by zeroing in on Ms. Tonolla's statements. Instead, SSHC asserts that negligent misrepresentation occurred because Affinity, with full knowledge of the ongoing governmental investigations, represented that "it would smoothly procure insurance coverage for SSHC with Affinity's new partner and that there would be no change in coverage" in light of Affinity's relationship with National Union. (Docket No. 69 at 6).

Even with the gloss given the statements by SSHC, the Court does not see how Ms. Tonolla's email contains anything more than the type of statements which Tennessee courts have repeatedly found to be insufficient to support a negligent misrepresentation claim because that "tort . . . cannot be based on conjecture, statements of opinion, puffing and sales talk, or representations of future events." Gardner v. Anesthesia & Pain Consultants, P.C., 2004 WL 2715304 at *7 (Tenn. Ct. App. 2004). A couple of cases relied upon by Affinity illustrate the point.

In Henley v. Labat-Anderson, Inc., 1991 WL 120403 (Tenn. Ct. App. 1991), dismissal of a negligent misrepresentation claim was warranted even though plaintiff alleged that he was assured his job would remain after a new contractor assumed control of the facility where he worked. Such assurances included a personal letter from the incoming Vice President that the new contractor intended to hire plaintiff; a telephone call with that same Vice President wherein plaintiff was reassured that his job would continue; a telephone call from another representative wherein plaintiff was assured that the new contractor intended to employ him; and a personal discussion with that same representative during which plaintiff was informed that "you are on the organization chart – you have a job." Id. at **1-2. These assurances could not form the basis of a negligent

5

misrepresentation claim because "they were not representations about past or present fact, but rather plans, expectations and intentions concerning future hiring." Id. at *2.

In <u>Kleto v. AmSouth Bank</u>, 2005 WL 2573379 (E.D. Tenn. 2005), a Knoxville doctor ran into problems securing a loan from a bank in Florida for the purchase of a condominium and, in an attempt to resolve the matter, spoke with the Vice President of AmSouth Bank in Knoxville. According to the doctor, the Vice President asked him to return to Knoxville and assured him that he (the Vice President) "would make sure that the loan was approved." Id. at * 1. When it was not, the doctor and his wife sued AmSouth for negligent misrepresentation based upon the assurances made by the Vice President. The Tennessee Court of Appeals found that even "[a]ccepting plaintiffs' allegation as true, the[] [statements] embody a promise of future action to loan money" and, "[b]y definition . . . do not misrepresent a past or present fact." Id. at *3.

Ms. Tonolla's statement to SSHC to the effect of, "if you stay with us, we will smoothly transition you to a new carrier," is really no different than the statement from the Vice President to the doctor in <u>Kleto</u> to the effect of, "if you return to Knoxville, we will give you a loan," or the statement of the contractor's representatives to the employee in <u>Henley</u> to the effect of, "if you hang on, we will hire you." All are representations about the expectation of things to come, but none is sufficient to support a negligent misrepresentation claim under Tennessee law.

In reaching this conclusion, the Court recognizes that "Tennessee case law indicates that a misrepresentation about a future event can be the basis of a negligent misrepresentation claim if the misrepresentation about the future event is based on a present fact." Int'l Mkt., 2010 WL 4514980 at *3. But, Ms. Tonolla's statement about a smooth transition is not based upon a present fact. Rather it is a statement about what she believes will happen in the future. Accordingly, SSHC claim

6

for negligent misrepresentation is dismissed.

**B. Count III – TCPA**

"In order to recover under the TCPA, the plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal or mixed, or any other article, commodity or thing of value wherever situated [.]" Tucker v. Sierra Builders, 180 S.W.3d 109, 115 (Tenn. Ct. App.2005) (quoting Tenn. Code Ann. § 47-18-109(a)(1)). The TCPA is broadly construed in favor of consumer protection, id., and applies to the insurance industry (including agents) "under the broad 'catch-all' provision that prohibits 'engaging in any other act or practice which is deceptive to the consumer or to any other person.'" Sainaam, Inc. v. Amer. Nat'l Prop. & Cas. Co., 2008 WL 4346679 at *4 (W.D. Tenn. 2008) (quoting Myint v. Allstate Ins. Co., 970 S.W.2d 920, 925 (Tenn.1998)).

Affinity moves to dismiss Count III of the Third-Party Complaint on the grounds that SSHC has failed to plead an "ascertainable loss" as required by the TCPA.[1] In response, SSHC argues that it pleads an "ascertainable loss" in two forms – the fees and expenses it has and will incur in defending the declaratory judgment action, and the costs which will be associated with securing alternative insurance should National Union prevail on it request for recession.

With respect to the first category of losses, SSHC argues that its claim "is very similar to the damages it alleges for violations of the TCPA against National Union, which this Court held was sufficient to state a claim under the TCPA." (Docket No. 69 at 6). However, this Court's prior

---

[1] In a footnote, Affinity also claims that since SSHC has not has shown Ms. Tonolla's statements to be false for purposes of its negligent misrepresentation claim, SSHC cannot meet the first element of a TCPA claim. The Court, however, makes no finding as to the veracity of Ms. Tonolla's statement. Moreover, the first element of a TCPA claim deals with actions or practices which are unfair or deceptive.

ruling was rendered in the context of claims between SSHC and National Union. Specifically, SSHC claimed that National Union engaged in an unfair or deceptive practice by the very act of filing a declaratory judgment action which SSHC was then required to spend money to defend. (Docket No. 53 at 7). The situation is vastly different regarding Affinity because it did not file the declaratory judgment action which caused the "ascertainable loss" in the form of fees and expenses about which SSHC complains.

As for the second category of losses, Affinity argues that the same are speculative because they are contingent upon National Union prevailing in the declaratory judgment action and the rescission of the underlying policies. In support of its position, Affinity relies primarily upon Waggin' Train, LLC v. Nomerica, Inc., 2010 WL 145776 (W.D. Tenn. 2010).

In Waggin Train, the court dismissed a TCPA claim because the complaint did not set forth an "ascertainable loss," even though it set forth numerous allegations "of the dire straits in which Plaintiff *potentially* could find itself as a result of Defendants' conduct[.]" Id. 4 (italics in original). However, in arriving at its conclusion, the court observed that "it is evident from the language of the statute that to establish a TCPA claim, a plaintiff must demonstrate that it actually has suffered damages that are more than conjectural, and that emanate from the defendant's unfair or deceptive acts." Id.

At this point, the Court cannot say, as a matter of law, that SSHC will be unable to establish an "ascertainable loss" within the meaning the TCPA. While SSHC might not be able to place a precise figure on its loss at this time, this does not mean that the damages are incalculable or unascertainable. SSHC may be able to place an exact dollar amount on the loss it sustained as a result of Affinity's alleged violation of the TCPA. Since this is what the TCPA requires, SSHC has

sufficiently pled a plausible claim for relief and the TCPA count will not be dismissed.

## IV. **CONCLUSION**

On the basis of the foregoing, Affinity's Partial Motion to Dismiss (Docket No. 55) SSHC's Third-Party Complaint is granted with respect to SSHC negligent misrepresentation claim as set forth in Count II, but denied with respect to the TCPA claim as set forth in Count III.

*Todd Campbell*
Todd J. Campbell
United States District Judge