# SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement (the "Agreement") is made and entered, as of the last date this Agreement is signed by all Parties, by and between the Insurers and the Liquidating Trustee, on behalf of the Liquidating Trust and Small Smiles.

## RECITALS

WHEREAS, National Union issued to SSHC as first named insured the SSHC Policies affording dental professional liability insurance coverage to the Insureds subject to the terms, conditions and limitations contained in each policy;

WHEREAS, the Insurers issued the Non-SSHC Policies affording dental professional liability insurance coverage to each of the Clinic Dentists, subject to the terms, conditions and limitations contained in each policy;

WHEREAS, Small Smiles Claims have been asserted against certain of the Insureds and the Clinic Dentists by or on behalf of certain Claimants, and additional Small Smiles Claims may be asserted;

WHEREAS, the Insurers have agreed to participate in the defense of their Insureds and Clinic Dentists named as defendants in lawsuits asserting Small Smiles Claims subject to a full and complete reservation of all rights;

WHEREAS, on February 20, 2012, Small Smiles filed voluntary petitions under the Bankruptcy Code in the Bankruptcy Court, thereby commencing the Bankruptcy Case;

WHEREAS, the Bankruptcy Court approved the Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Proposed by Debtors and the Official Committee of Unsecured Creditors (the "Plan") upon entry of its Findings of Fact, Conclusion of Law & Order Confirming the Plan on March 7, 2013;

WHEREAS, Dan B. Lain was appointed to serve as the Liquidating Trustee for the Liquidating Trust upon entry of the Findings of Fact, Conclusion of Law & Order Confirming the Plan by the Bankruptcy Court on March 7, 2013;

WHEREAS, the Plan authorizes the Liquidating Trustee to execute the Liquidating Trust Agreement to establish the Liquidating Trust for the benefit of, *inter alia*, the Claimants and to exercise and discharge all rights and obligations as to any insurance policies affording coverage to the Insureds, including the SSHC Policies, and to the Clinic Dentists, including the Non-SSHC Policies, in connection with the Small Smiles Claims;

WHEREAS, as specified in the Plan, all Claimants are deemed to grant to the Liquidating Trust the right and power to bind them to a settlement of Insurance Rights, including as to the Policies, in connection with their Small Smiles Claims;

WHEREAS, the Plan further authorizes the Liquidating Trust in connection with any resolution of Insurance Rights, including as to the Policies, to compromise, settle and release any

i

claims or potential claims by the Claimants, the Insureds and the Clinic Dentists against any insurer relating to the Small Smiles Claims, subject to approval by the Trust Advisory Committee and approval by the Bankruptcy Court after notice and hearing;

WHEREAS, the Plan authorizes the Liquidating Trustee to implement a settlement structure and adopt Trust Distribution Procedures that shall be binding upon and govern distributions from the Liquidating Trust to the Claimants as to any of their Small Smiles Claims that are unsatisfied at the time such a structure and procedures are implemented, subject to approval by the Trust Advisory Committee and approval by the Bankruptcy Court after notice and hearing;

WHEREAS, National Union commenced the Coverage Case against SSHC, seeking rescission or reformation of the SSHC Policies;

WHEREAS, SSHC commenced a related third-party action against Affinity in the Coverage Case;

WHEREAS, the Liquidating Trustee, on behalf of the Liquidating Trust and Small Smiles, and the Insurers have engaged in good faith settlement discussions among themselves and with the advice of members of the Trust Advisory Committee in an effort to resolve fully and finally the Insurance Rights and further to compromise and resolve the Insureds' and the Clinic Dentists' potential liability and the Insurers' coverage obligations for the Small Smiles Claims;

WHEREAS, the Liquidating Trustee and the Insurers believe that, if their disputes and other remaining issues are not resolved now, future proceedings would be protracted and expensive, involve complex issues of liability and/or damages and involve substantial expense and the uncertainties and risks inherent in litigation; and

WHEREAS, the effectiveness of this Agreement shall be conditioned on the consent of the Trust Advisory Committee, pursuant to the provisions of the Liquidating Trust Agreement, which shall be obtained prior to the hearing on the Approval Order, and in any event no later than the time permitted under the Plan or the Liquidating Trust Agreement after such consent is sought.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the adequacy and sufficiency of which is hereby acknowledged by the Parties, and intending to be legally bound hereby, the Parties agree as follows:

## SECTION I

## DEFINITIONS

The following definitions shall apply to the capitalized terms used in this Agreement:

a.    "**Affinity**" means Affinity Insurance Services, Inc. d/b/a Dentist's Advantage.

b.  "**Agreement**" shall have the meaning set forth above in the preamble.

c.  "**Approval Order**" means an order of the Bankruptcy Court or, if applicable, the District Court, approving the terms of this Agreement and the Liquidating Trust's entry into this Agreement. As set forth in Section V below, the Approval Order shall contain at least the Plan Release and the terms set forth in Section III, Paragraph C below, and shall include no terms that reduce in any way the protections provided to the Insurers as contemplated in this Agreement. The Approval Order shall be in a form acceptable to the Insurers. The form of the Approval Order attached as Exhibit A hereto is acceptable to the Insurers if entered by the Bankruptcy Court or, if applicable, the District Court.

d.  "**Bankruptcy Case**" means the bankruptcy cases that were initiated in the Bankruptcy Court and styled:  In re: CS, DIP LLC (f/k/a Church Street Health Management, LLC), Case No. 12-01573; In re: SSHC DIP, LLC (f/k/a Small Smiles Holding Company, LLC), Case No. 12-01574; and In re: FNY DIP, LLC (f/k/a FORBA NY, LLC), Case No. 12-01575 (jointly administered under Case No. 12-01573).

e.  "**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as it may be amended.

f.  "**Bankruptcy Court**" means the United States Bankruptcy Court for the Middle District of Tennessee (Nashville Division).

g.  "**Bankruptcy Rules**" means collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court.

h.  "**Breakup Provision**" means, as set forth in Section VIII below, the Trust Advisory Committee's ability to exercise its Option and decline to proceed with this Agreement.

i.  "**Claim**" means any past, present or future claim, demand, action, cause of action, suit or liability of any kind or nature whatsoever (including claims for equitable or contractual indemnification or contribution), whether at law or in equity, pursuant to a statute, rule or regulation, liquidated or unliquidated, matured or unmatured, known or unknown, asserted or unasserted, anticipated or unanticipated, accrued or unaccrued, fixed or contingent, secured or unsecured, which has been asserted, could have been asserted or that may in the future be asserted, by or on behalf of any Person, whether seeking damages (including compensatory, punitive or exemplary damages) or equitable, mandatory, injunctive or any other type of relief, including cross-claims, counter-claims, third-party claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability (including Potentially Responsible Party or "PRP" notices), arbitrations, actions, rights, requests, demands for payment, causes of action, orders or judgments, including without limitation, any "claim" as that term is defined in the Bankruptcy Code, 11 U.S.C. § 101(5).

j.  "**Claimant**" means any Person who has asserted, is asserting or could assert in the future a Small Smiles Claim against the Insureds, the Clinic Dentists and/or any of the Insurers.

- iii -

k.   "**Claims Documentation**" means all documents that a Claimant must submit to the Liquidating Trustee to satisfy the Settlement Criteria to qualify for a distribution from the Settlement Balance pursuant to the Trust Distribution Procedures to be adopted by the Liquidating Trust.

l.   "**Clinic Dentists**" means any dentist who was employed at one of the Dental Clinics during the effective dates of the SSHC Policies and/or is scheduled as an insured, named insured or additional insured at any time under any of the Non-SSHC Policies. Notwithstanding the foregoing, Clinic Dentists shall not include any of the following individuals: Danny DeRose, Edward DeRose, Michael DeRose, William Mueller, Michael Roumph, Richard Lane or Adolph Padula.

m.   "**Coverage Case**" means the case pending in the United States District Court for the Middle District of Tennessee styled National Union Fire Insurance Company of Pittsburgh, PA v. Small Smiles Holding Company, LLC, Civil Action No. 3:10-cv-00743.

n.   "**Current Claimants**" mean those Claimants with Current Claims.

o.   "**Current Claims**" means, as determined by the Trust Advisory Committee pursuant to Section VIII, Paragraph A below, either (1) the Small Smiles Claims associated with those Claimants who are represented by counsel as of the Execution Date, or (2) the Small Smiles Claims associated with those Claimants who are represented by counsel as of December 11, 2014.

p.   "**Dental Clinic**" means any dental clinic that was under or is claimed to have been under a management agreement with Small Smiles during the effective dates of the SSHC Policies and/or is scheduled as an insured, named insured or additional insured under any of the SSHC Policies.

q.   "**Direct Action Claim**" means any Claim asserted or that could be asserted by any Person against the Insurers that (1) arises from the activities of the Insureds or the Clinic Dentists that give rise to the Settled Claims under the Policies, and/or (2) the Insureds or the Clinic Dentists' interests in or rights to coverage under the Policies, whether arising by contract, in tort, in equity or under the laws of any jurisdiction, including any statute that gives a third party a direct cause of action against an insurer.

r.   "**District Court**" means the United States District Court for the Middle District of Tennessee (Nashville Division).

s.   "**Effective Date**" means the third business day after the latter of: (1) as set forth in Section VIII, Paragraph C below, the date the Trust Advisory Committee declines to exercise its Option or the date that the Option expires upon non-exercise by the Trust Advisory Committee; and (2) the date the Approval Order has become a Final Order.

t.   "**Entities Policies**" means the 2009-10 Entities Policy and the 2008-09 Entities Policy.

u.   "**Escrow**" means the escrow or trust account to be (or that has been) established and administered by the Liquidating Trustee in connection with this Agreement.

v.    "**Execution Date**" means the first date upon which the Parties have executed this Agreement and it is approved by the Trust Advisory Committee.

w.    "**Extra-Contractual Claim**" means any Claim, including Small Smiles Claims, asserted or that could be asserted by any Person against the Insurers with respect to the Policies seeking any type of relief, including compensatory, exemplary or punitive damages on account of alleged bad faith; failure to act in good faith; violation of any duty of good faith and fair dealing; violation of any unfair claims practices act or similar statute, regulation or code; claims handling; or any other similar type of alleged misconduct or any other act or omission of any Insurer of any type for which the Person seeks relief other than coverage or benefits directly provided under the Policies.

x.    "**Final Order**" means an order or judgment of the Bankruptcy Court (or the District Court, if applicable) that has not been reversed, stayed, modified or amended and as to which (1) any right to appeal or seek certiorari, review, reargument, stay or rehearing has expired and no appeal or petition for certiorari, review, reargument, stay or rehearing is pending; or (2) an appeal has been taken or petition for certiorari, review, reargument stay or rehearing has been filed and (a) such appeal or petition for certiorari, review, reargument, stay or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review reargument, stay or rehearing was sought, and (b) the time to appeal further or seek certiorari, review, reargument, stay or rehearing has expired and no such further appeal or petition for certiorari, review, reargument, stay or rehearing has expired and no such further appeal or petition for certiorari, review, reargument, stay or rehearing is pending; provided, however, that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed relating to such order shall not cause such order to not be a Final Order.

y.    "**Future Claimants**" mean those Claimants with Future Claims.

z.    "**Future Claims**" means any Small Smiles Claims that are not Current Claims.

aa.    "**Insurance Coverage Claim**" means any Claim for insurance coverage by the Insureds or Clinic Dentists under the Policies, whether direct, indirect or derivative, for defense, indemnity, contribution or otherwise.

bb.    "**Individuals Policies**" means the 2009-10 Individuals Policy and the 2008-09 Individuals Policy.

cc.    "**Insurance Rights**" means, as defined in the Plan, any right to defense, indemnification, payment of claims or any other benefit under any and all insurance policies that do or may provide coverage to the Insureds and/or the Clinic Dentists.

dd.    "**Insureds**" means SSHC, any Dental Clinic and any of the insureds, named insureds and additional insureds scheduled at any time under any of the SSHC Policies. Notwithstanding the foregoing, Insureds shall not include any of the following individuals: Danny DeRose, Edward DeRose, Michael DeRose, William Mueller, Michael Roumph, Richard Lane or Adolph Padula.

ee. "**Insurers**" means, collectively, National Union and any other member underwriting company of American International Group, Inc. (including under the Policies), including AIG Claims, Inc., and solely in their capacities as such, all of its/their past, present or future: predecessors and predecessors-in-interest companies; successors and successors-in-interest companies; affiliates and affiliated companies; divisions; subsidiaries and subsidiary companies; parents and parent companies; partners; joint ventures and joint venturers; insurers, reinsurers, retrocessionaires, assigns and assignees; related companies; employees; principals; agents; officers; directors; stockholders; representatives; attorneys; lawyers; claims handlers, claims administrators, employed or retained law firms; and legal counsel, but only with respect to its handling of claims arising from or relating to the Small Smiles Claims.

ff. "**Liquidating Trust**" means the CS DIP Liquidating Trust and the Qualified Settlement Fund Trust, established pursuant to Section 5.3 of the Plan and the Plan Supplement Documents.

gg. "**Liquidating Trust Agreement**" means the trust agreements establishing and governing the Liquidating Trust.

hh. "**Liquidating Trustee**" means the trustee of the Liquidating Trust.

ii. "**Liquidation Matrix**" means the schedule of values attached hereto as Exhibit B based upon which the Liquidating Trustee will calculate the liquidated amount of each Small Smiles Claim that satisfies the Settlement Criteria for the purpose of determining if the Breakup Provision is triggered as specified in Section VIII, Paragraph B below. Any Small Smiles Claim outside of the ten (10) treatment/procedure categories specified in the Liquidation Matrix has a value of zero.

jj. "**National Union**" means National Union Fire Insurance Company of Pittsburgh, PA.

kk. "**Non-SSHC Policies**" means except as to the SSHC Policies any insurance policies issued by or on behalf of the Insurers affording dental professional liability insurance coverage or any such similar professional liability coverage to any of the dentists scheduled under such policies as an insured, additional insured or named insured at any time who is or was employed at any time at any of the Dental Clinics.

ll. "**Notice Period**" means the period of time fixed by the Bankruptcy Court (or the District Court, if applicable) within which Claimants are allowed to file claims with the Liquidating Trust after notice as approved by the Bankruptcy Court (or the District Court, if applicable).

mm. "**Notice to Claimants**" means notice to Claimants in a manner approved by the Bankruptcy Court (or the District Court, if applicable) that it has (1) approved the proposed Trust Distribution Procedures and has established a deadline by which Claimants must file claims with the Liquidating Trust, and (2) approved this Agreement and issued the Approval Order to which Persons who wish to assert objections must file such objections by a date fixed by the Bankruptcy Court (or the District Court, if applicable).

Case 3:10-cv-00743   Document 372-1   Filed 06/26/15   Page 6 of 64 PageID #: 14390

nn. "**Option**" means, as set forth below in Section VIII, Paragraph C below, the Trust Advisory Committee's ability to invoke the Breakup Provision and exercise its option to void this Agreement upon written notice communicated to the Insurers via email and overnight mail, which unless exercised automatically expires twenty-five (25) business days after the expiration of the Notice Period.

oo. "**Parties**" means, collectively, the following:

    1. the Insurers; and

    2. the Liquidating Trustee, on behalf of the Liquidating Trust and Small Smiles.

pp. "**Person**" means an individual, including Claimants, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, a trust, an estate, trustee, executor, administrator, an unincorporated organization or a legal representative.

qq. "**Plan**" means the Chapter 11 plan of reorganization for Small Smiles that was entered by the Bankruptcy Court on March 7, 2013 as the Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Proposed by Debtors and the Official Committee of Unsecured Creditors (as subsequently amended, if applicable).

rr. "**Plan Injunction**" means a permanent injunction forever barring and enjoining all Persons from commencing, continuing or prosecuting any Settled Claims against the Insurers.

ss. "**Plan Release**" means a release, as set forth in the Approval Order, pursuant to which the Settled Claims are deemed to have been waived and/or released by any and all Claimants.

tt. "**Plan Supplement Documents**" means those documents forming a supplement to the Plan, as entered on February 15, 2013.

uu. "**Policies**" means, collectively, the SSHC Policies and the Non-SSHC Policies.

vv. "**Release**" means a statement, substantially similar to that contained in Exhibit C hereto and as further described in Section IV below, to be included in the Claims Documentation submitted by each Claimant to the Liquidating Trustee, and with no reduction or limitation in the release or protection set forth therein, whereby each Claimant acknowledges, individually or through his or her counsel, that, upon payment of the Settlement Amount by the Insurers to the Liquidating Trust, any Small Smiles Claims that such Claimant might have been entitled to assert against the Insurers are released and that any Small Smiles Claims that such Claimant may assert against any of the Insureds or the Clinic Dentists who provide a sworn statement that that they in good faith believe they have or had a right to coverage under any of the Policies, are rendered non-recourse as provided in Section 4.17 of the Plan.

ww. "**Settled Claims**" means any and all Claims that are asserted or could be asserted by or on behalf of Claimants, the Clinic Dentists, the Dental Clinics or any other Person against the Insurers based upon, arising out of or in any way relating to the Small Smiles Claims,

including Insurance Coverage Claims, Direct Action Claims and/or Extra-Contractual Claims.

xx.  "**Settlement Amount**" means, as set forth in Section III below, the $39 million to be paid by or on behalf of the Insurers to the Liquidating Trust.

yy.  "**Settlement Balance**" means the net proceeds of the Settlement Amount in Escrow after deduction is made for reasonable costs incurred by the Liquidating Trustee, including reasonable compensation for services rendered by the Liquidating Trustee and reimbursement of reasonable expenses incurred by the Liquidating Trustee.

zz.  "**Settlement Criteria**" means such requirements that Claimants must satisfy in order to receive a distribution under the Trust Distribution Procedures.  The Settlement Criteria shall require at least the following:

a.  Documentation that the Claimant received treatment at a Dental Clinic in the time period between February 1, 2000 and December 1, 2010, and that such treatment qualifies for a distribution of the Settlement Balance under the Liquidation Matrix; and

b.  Documentation from a dentist, currently or previously licensed to practice dentistry, whose license has never been revoked, with appropriate experience treating children 12 and under, that some or all of the treatment provided to the Claimant at the applicable Dental Clinic for which the Claimant seeks a distribution under a. above failed to meet the applicable standard of care.

aaa.  "**Small Smiles**" means, collectively, SSHC, CS DIP, LLC (f/k/a Church Street Health Management, LLC f/k/a FORBA Holdings, LLC) and FNY DIP, LLC (f/k/a FORBA NY, LLC).

bbb.  "**Small Smiles Claims**" means any and all Claims asserted or that could be asserted in the past, present or future by or on behalf of any Person, whether currently known or not, against any of the Insureds or the Clinic Dentists for personal injury, tort, wrongful death, medical monitoring, or any other economic or noneconomic injury or damage (whether physical, emotional or otherwise), based upon, arising out of or related to, directly or indirectly, any dental treatment or dental services that the Insureds and the Clinic Dentists rendered, or failed to render, to such Person at any Dental Clinic.

ccc.  "**SSHC**" means Small Smiles Holding Company (n/k/a SSHC DIP, LLC).

ddd.  "**SSHC Policies**" means the following National Union policies issued to SSHC as the first named insured:  (1) Dentists Liability Policy No. DNU3375848 for the policy period of September 26, 2009 to September 26, 2010 (the "2009-10 Entities Policy"); (2) Dentists Liability Policy No. DNU3375848 for the policy period of September 26, 2008 to September 26, 2009 (the "2008-09 Entities Policy"); (3) Dentists Liability Policy No. DNU6360128 for the policy period of December 1, 2009 to December 1, 2010 (the "2009-10 Individuals Policy"); and (4) Dentists Liability Policy No. DNU6360128 for the policy period of December 1, 2008 to December 1, 2009 (the "2008-09 Individuals Policy").

- viii -

eee. "**Termination Event**" shall have the meaning set forth in Section IX below.

fff. "**Trust Advisory Committee**" means, as defined in the Plan, the committee established pursuant to the Liquidating Trust Agreement.

ggg. **"Trust Distribution Procedures"** means the process set forth, as described in Section 4.17(g) of the Plan and in Section IV below, to resolve Small Smiles Claims, in a form substantially similar to Exhibit D hereto.

## SECTION II

### EFFECTIVENESS

A.      This Agreement shall be effective and binding upon the Parties in accordance with its terms on the Execution Date, provided, however, that certain of the Parties' obligations are expressly subject to and conditioned upon entry of the Approval Order by the Bankruptcy Court (or the District Court, if applicable) by Final Order.

B.      As further specified in Section IX below, in the event that the Bankruptcy Court (or the District Court, if applicable) denies entry of the Approval Order and such denial cannot be cured by amending this Agreement in a manner that is (1) materially consistent with this Agreement or the Plan and (2) agreed to by the Parties, then this Agreement shall immediately terminate and be of no further force or effect; provided, however, that such termination may be waived by unanimous written consent of the Parties.

## SECTION III

### PAYMENT OF THE SETTLEMENT AMOUNT

A.      Subsequent to the Execution Date, the Insurers shall pay (or cause to be paid) up to $1,000,000.00 of the Settlement Amount to the Liquidating Trust on an as-needed basis for the Liquidating Trust's costs incurred subsequent to the Execution Date in administering this Agreement, but not including any attorneys' fees, by check sent via overnight mail to the Liquidating Trustee no later than fifteen (15) calendar days after the Liquidating Trustee requests such sums. Notwithstanding the foregoing, after the Approval Order is first issued by the Bankruptcy Court (or the District Court, as applicable) the Insurers shall pay any such administrative costs related to Notice to Claimants, by check sent via overnight mail to the Liquidating Trustee, no later than five (5) calendar days after requested by the Liquidating Trustee. However, in no event shall the Insurers be required to pay more than $500,000.00 of administrative costs in any calendar month. Any amount in excess of $500,000.00 requested by the Liquidating Trustee in any one calendar month shall be paid no later than the fifteenth day of the next calendar month. In no event shall the Insurers pay more than $1,000,000.00 of the Settlement Amount to the Liquidating Trust for the

foregoing costs.  The Liquidating Trustee shall document and maintain a written accounting of the foregoing costs for review by the Insurers upon their request.

B.      Not later than thirty (30) calendar days after the Effective Date, and provided that this Agreement has not been terminated in accordance with its terms, the Insurers shall pay (or cause to be paid) the Settlement Amount (less any sums already paid to the Liquidating Trust in accordance with Paragraph A above) to the Liquidating Trust by check sent via overnight mail to the Liquidating Trustee.  Upon payment of the Settlement Amount, such payment shall be, and shall be deemed, irrevocably and indefeasibly paid to the Liquidating Trustee.

C.      Upon payment by the Insurers of the Settlement Amount and regardless of any subsequent events:  (1) all provisions of this Agreement shall be final and binding; (2) the Entities Policies are exhausted by payment of the Settlement Amount, which is in excess of the full amount of the aggregate coverage limits of all the Entities Policies combined; (3) each of the SSHC Policies shall be deemed to be bought-out by the Insurers, subject to a free and clear sale pursuant to the Plan and/or Section 363 of the Bankruptcy Code, as applicable; (4) the Insureds and Claimants shall each be deemed to have released the Insurers from any further payment obligations under the SSHC Policies; (5) any claims for coverage relating to the Small Smiles Claims under the Non-SSHC Policies shall be deemed to be bought-out by the Insurers, subject to a free and clear sale pursuant to the Plan and/or Section 363 of the Bankruptcy Code, as applicable; and (6) the Clinic Dentists and Claimants shall each be deemed to have released the Insurers from any further payment obligations under the Non-SSHC Policies for any claims for coverage relating to the Small Smiles Claims.  The Parties further agree that the foregoing shall be expressly incorporated in the Approval Order.

## SECTION IV

## LIQUIDATION OF THE SMALL SMILES CLAIMS

A.      No later than seven (7) business days after this Agreement is executed by the Parties, the Liquidating Trustee will seek approval of Trust Distribution Procedures from the Bankruptcy Court pursuant to the terms of the Plan and of the Liquidating Trust Agreement.

B.      The Trust Distribution Procedures will, among other things, fix a deadline for the submission of Claims Documentation evidencing satisfaction of the Settlement Criteria.

C.      The Trust Distribution Procedures also will, among other things, require that Claims Documentation include an acknowledgement by the Claimant that, upon payment of the Settlement Amount by the Insurers to the Liquidating Trust, any Claims that such Claimant might have been entitled to assert against the Insurers related to Small Smiles Claims are released and that any Small Smiles Claims that such Claimant may assert against any of the Insureds or the Clinic Dentists who

provide a sworn statement that they in good faith believe they have or had a right to coverage under any of the Policies, are non-recourse as provided in Section 4.17 of the Plan.

D.     Prior to filing with the Bankruptcy Court (or the District Court, if applicable), but only if the Trust Distribution Procedures proposed by the Trustee differ from those attached as Exhibit D hereto, the Liquidating Trustee shall provide the proposed Trust Distribution Procedures to the Insurers for review and approval. The Trust Distribution Procedures shall incorporate terms adequate to administer the distribution of the Settlement Amount in a manner consistent with the terms of this Agreement. The Insurers shall have at least five (5) business days to approve the Trust Distribution Procedures before such a filing. The Insurers shall not fail to approve the proposed Trust Distribution Procedures unless such procedures are inconsistent with the Insurers' interests under this Agreement.

E.     The Liquidating Trustee shall not propose any modification to the Trust Distribution Procedures that would modify the Release requirement of the Claimants' Claims Documentation, change the form of the Release or materially modify the Settlement Criteria that are applicable to distribution of the Settlement Amount.

F.     The Insurers are not and shall not be a party to the implementation of the Trust Distribution Procedures, other than to pay the Settlement Amount in accordance with the terms of this Agreement. Once the Insurers consent to the Trust Distribution Procedures and pay the Settlement Amount in accordance with the terms of this Agreement, the Insurers shall have no further duty, obligation, responsibility or involvement with the Trust Distribution Procedures or how these procedures are implemented.

## SECTION V

## LIQUIDATING TRUST AND LIQUIDATING TRUSTEE OBLIGATIONS

A.     The Liquidating Trustee shall, no later than two (2) business days after the Parties execute this Agreement, send the Trust Advisory Committee a request for consent to this Agreement and notice of the right to make the election provided in Section VIII, Paragraph A below. The Trust Advisory Committee's response to the request for consent shall be due no later than thirty (30) calendar days after such notice is given (as permitted by the Plan).

B.     The Liquidating Trustee shall, as soon as is reasonably practicable subsequent to the date this Agreement is executed by the Parties, seek an Approval Order that shall include the Plan Release and the Plan Injunction. The motion seeking approval of the Approval Order shall be served on all parties who requested notice in the Bankruptcy Case, all known Claimants (through their counsel), the Dental Clinics, all known insurers with an interest other than the Insurers and counsel for the following individuals: Danny DeRose, Edward DeRose, Michael

- xi -

DeRose, William Mueller, Michael Roumph, Richard Lane, Adolph Padula, Monica Switzer and Giang Pham. The Liquidating Trustee will also serve a notice approved by the Bankruptcy Court on all of the Insureds, the Clinic Dentists and those parties who received notice of the Plan when it was confirmed, to the extent mailing addresses can reasonably be located. The Liquidating Trustee will use reasonable efforts to locate mailing addresses for service upon the Insureds, those Clinic Dentists who are insureds under the SSHC Policies, those Clinic Dentists named on a list provided by Debtors as comprising their dentist employees and any Person who received notice of the Plan when it was confirmed by the Bankruptcy Court. The Insurers may supply additional parties for notice, within reason, on the condition that the Insurers provide names and mailing addresses for such additional notice parties. The Approval Order shall schedule a second objection date at which parties not receiving the original notice of the motion, but subsequently notified by publication or otherwise, may assert objections thereto, and request a hearing, with no prejudice due to the later time of their objection and request. The Approval Order shall not be "final" within the meaning of "Final Order" until the expiration of all time periods resulting from such second objection date.

C.      The Approval Order and any documents, pleadings, notices or orders related thereto, insofar as they effectuate or relate to the rights, benefits and obligations provided for by this Agreement, shall each be provided to the Insurers in draft for review and comment a reasonable time, but not less than five (5) business days, prior to their filing with the Bankruptcy Court (or the District Court, if applicable) or otherwise being publicly disclosed, but only if changes are made to such documents previously approved by the Insurers, to ensure that such documents do not reduce or limit the scope of the release or protection for the Insurers contemplated by this Agreement. To the extent reasonably possible, the Liquidating Trustee will accommodate and incorporate comments and suggestions provided by the Insurers.

D.      The Liquidating Trustee shall undertake commercially reasonable efforts to defend the Approval Order in the event of a direct appeal of that order and shall also cooperate and assist, at no material cost to the Trust, with any and all other defense of the Approval Order, including the Plan Injunction, by the Insurers. Such cooperation shall include, acknowledging the Settlement Amount is in excess of the full amount of the aggregate coverage limits of all the Entities Policies combined.

E.      To the extent that such obligations exist, the Liquidating Trustee shall be responsible for any reimbursement and repayment obligations under the Medicare Act for claim-related conditional payments made under Medicare Part A, B, C and D or any state's Medicaid statute prior to any disbursement of amounts from the Settlement Balance to a Claimant whose Small Smiles Claim has been finally determined. To the extent that such obligations exist, the Liquidating Trustee shall further be responsible for any reporting or financial obligations imposed by the Medicare Act or any state's Medicaid statute in connection with any such

- xii -

disbursements to a Claimant, as further described in the Trust Distribution Procedures.

## SECTION VI

## RELEASES

A.     Upon payment of the Settlement Amount, and without any further action by the Parties, the Liquidating Trustee, on behalf of the Liquidating Trust and Small Smiles, hereby fully, finally and completely, remises, releases, acquits and forever discharges the Insurers and Affinity of and from the Settled Claims.  In connection with the foregoing, the Liquidating Trustee intends to and does hereby grant the broadest possible release and other relief to the Insurers, their respective insureds and Affinity with respect to all such claims that the Liquidating Trustee has the authority to grant under the Plan.

B.     The Liquidating Trustee does, pursuant to this Agreement, exercise the rights granted under Section 4.17(d) of the Plan to provide and require that all remaining Small Smiles Claims against the Insureds and the Clinic Dentists shall, immediately upon payment of the Settlement Amount, become non-recourse as to the Insureds and Clinic Dentists who provide a sworn statement that they in good faith believe they have or had a right to coverage under any of the Policies.  The holders of any Small Smiles Claims that are made non-recourse pursuant to the preceding sentence shall be entitled to recovery only from the assets of the Liquidating Trust as provided in the Trust Distribution Procedures and/or insurance companies other than the Insurers and related to policies of insurance other than the Policies.

C.     Nothing in this Section VI or any other provision of this Agreement is intended to, nor shall it be construed to, have any effect on, or constitute a release, waiver, assignment or discharge of, the Insurers' rights or Claims for reinsurance in connection with the Policies and/or the Settled Claims, if any, all of which are expressly reserved by the Insurers.

D.     Nothing in this Section VI or any other provision of this Agreement is intended to, nor shall it be construed to, have any effect on, or constitute a release, waiver or discharge of, the Parties' respective rights, obligations, remedies or Claims created under this Agreement.

E.     Nothing in this Section VI or any other provision of this Agreement is intended to, nor shall it be construed to, have any effect on, or constitute a release, waiver or discharge of, the Insurers' obligations to defense counsel or other parties for any amounts incurred at the Insurers' direction in connection with the defense provided by the Insurers of Small Smiles Claims asserted against the Insureds.

F.     Nothing in this Section VI or any other provision of this Agreement is intended to, nor shall it be construed to, have any effect on, or constitute a release, waiver, assignment or discharge of, Claimants' Claims or causes of action against

- xiii -

FORBA LLC, FORBA NY LLC, DeRose Management Company, DD Marketing, Inc., Danny DeRose, Edward DeRose, Michael DeRose, William Mueller, Michael Roumph, Richard Lane or Adolph Padula.

G.     The Parties hereto acknowledge that they are aware that they may hereafter discover facts different from or in addition to those they now know or believe to be true with respect to the Small Smiles Claims, causes of action, rights, obligations and liabilities herein released, and each agrees that the within release shall be and remain in effect in all respects as a complete release as to all matters released herein, notwithstanding any such different or additional facts.

## SECTION VII

## RESOLUTION OF LITIGATION

A.     No later than five (5) business days after the Execution Date, Insurers and counsel for the relevant Claimants, as separately agreed between them prior to the Execution Date, will undertake the necessary steps to suspend all further litigation as to the Insureds and the Clinic Dentists in any lawsuits asserting Small Smiles Claims against such Insureds or Clinic Dentists while the Liquidating Trustee seeks the Approval Order.

B.     No later than ten (10) business days after the Settlement Amount is fully, irrevocably and indefeasibly paid, as provided in Section III above, the Parties and the Claimants will undertake any and all necessary steps to dismiss all lawsuits, on a with prejudice basis, that are then pending against the Insureds (including the Dental Clinics) or Clinic Dentists, who have provided no later than sixty (60) calendar days after the Approval Order is first issued, to the relevant Claimant's counsel, a sworn statement in a form reasonably acceptable to the relevant Claimant's counsel (e.g., interrogatory responses or an affidavit), evidencing that they do not have any insurance that might provide coverage for Small Smiles Claims (other than the Policies) (the "Sworn Statement"). Prior to the Effective Date, counsel for the relevant Claimants will deliver to the Insurers' counsel executed pleadings reasonably necessary to accomplish such dismissals for the Insureds (including the Dental Clinics) or Clinic Dentists, who have provided the Sworn Statements. The Insurers' counsel will hold them in trust until after the Settlement Amount is fully, irrevocably and indefeasibly paid. If this Agreement is terminated for any reason, the Insurers' counsel will return the executed dismissal pleadings to the Claimant's counsel who signed them. Any Insureds (including the Dental Clinics) or Clinic Dentists that supply the Sworn Statement after the Settlement Amount has been paid shall be entitled to a dismissal within ten (10) business days after the Sworn Statement is provided.

C.     No later than ten (10) business days after the Settlement Amount is fully, irrevocably and indefeasibly paid, as provided in Section III above, in respect of the action captioned <u>Varano, et al. v. FORBA Holdings, LLC, et al.</u>, Index No. 2128/2011, pending in New York State Supreme Court, County of Onondaga, the

- xiv -

Claimants in that matter will (1) withdraw the portion of the motion dated October 23, 2013, to set aside the verdict to the extent it seeks relief against FORBA Holdings, LLC n/k/a Church Street Health Management, LLC, FORBA NY, LLC, Small Smiles Dentistry of Syracuse, LLC, Koury Bonds, DDS, Naveed Aman, DDS and Yaqoob Khan, DDS, and (2) file a stipulation of discontinuance against those defendants with prejudice, but without costs or disbursements, stating that (i) each of plaintiffs' respective claims are fully and completely discharged in their entirety and that there is no finding of liability or negligence as to any of the foregoing dentist defendants; and (ii) to the extent the plaintiffs proceed with claims against other parties, plaintiffs make no claim under the doctrine of respondeat superior for the treatment provided by the foregoing dentist defendants.

D.     No later than five (5) business days after the Settlement Amount is fully, irrevocably and indefeasibly paid, as provided in Section III above, National Union will file in the Coverage Case the required notices, stipulations or motion to dismiss with prejudice that lawsuit.

E.     No later than five (5) business days after the Settlement Amount is fully, irrevocably and indefeasibly paid, as provided in Section III above, SSHC will file in the Coverage Case the required notices, stipulations or motion to dismiss with prejudice its third-party action against Affinity.

## SECTION VIII

## BREAKUP PROVISION

A.     The Trust Advisory Committee will have the right to determine whether the Current Claims shall be (1) the Small Smiles Claims associated with those Claimants who are represented by counsel as of the Execution Date, or (2) the Small Smiles Claims associated with those Claimants who are represented by counsel as of December 11, 2014.  To exercise this right, the Trust Advisory Committee must make a decision and inform the Insurers of its decision no later than five (5) business days after the Trust Advisory Committee receives the notice and request for consent described in Section V, Paragraph A above.  In order to be effective, such election by the Trust Advisory Committee must be communicated to the Insurers by both email and by overnight mail at the addresses specified in Section XI, Paragraph N below.  If the Trust Advisory Committee does not exercise the right to make such an election and timely inform Insurers of such election, Current Claims shall be defined as those Small Smiles Claims associated with those Claimants who are represented by counsel as of December 11, 2014. All Small Smiles Claims held by Claimants that are not Current Claims are deemed to be Future Claims for purposes of this Agreement.

B.     No later than fifteen (15) business days after the conclusion of the Notice Period, the Liquidating Trustee shall review all Future Claims made by the Future Claimants and determine, based on the submitted Claims Documentation, which,

if any, of their claims are allowable under the Trust Distribution Procedures. Each Future Claimant presenting one or more Future Claims satisfying all Settlement Criteria shall be assigned pursuant to the Liquidation Matrix a total point value reduced by 30% for all allowable Small Smiles Claims. The Liquidating Trustee will then calculate the aggregate total point value of all such allowable Small Smiles Claims held by the Future Claimants under the Liquidation Matrix. The determinations as to allowability and value of Future Claims hereunder shall not include any potential allowance for extraordinary circumstances and shall not limit the Liquidating Trustee's ability to permit late-filed or corrected claims under any potentially applicable provisions of the Trust Distribution Procedures.

C.  Subject to the following conditions, no later than ten (10) business days after the completion of the Liquidating Trustee's calculations set forth in Paragraph B above, the Trust Advisory Committee must make one of the three following elections:  (1) exercise the Option to void this Agreement upon written notice to the Insurers; (2) decline to exercise the Option to void this Agreement upon written notice to the Insurers; or (3) allow the non-exercised Option to expire as set forth in that definition.

    1.  If the Trust Advisory Committee defines Current Claims under (1) of that definition, the Trust Advisory Committee may only exercise the Option to void this Agreement if as a condition precedent the Liquidating Trustee calculates that the total point value for allowable Small Smiles Claims asserted by the Future Claimants under the Liquidation Matrix exceeds 750 points; or

    2.  If the Trust Advisory Committee elects to define Current Claims under (2) of that definition, the Trust Advisory Committee may only exercise the Option to void this Agreement if as a condition precedent the Liquidating Trustee calculates that the total point value for allowable Small Smiles Claims asserted by the Future Claimants under the Liquidation Matrix exceeds 1000 points.

D.  Except as otherwise set forth in Section IX, Paragraph B below, any amount of the up to $1 million of the Settlement Amount paid by the Insurers to the Liquidating Trust in accordance with Section III, Paragraph A above, shall be forfeited by the Insurers upon termination of this Agreement by the exercise of the Option by the Trust Advisory Committee. However, the Insurers shall be entitled to a credit in such amount with respect to any future resolution of Small Smiles Claims with the Liquidating Trust.

## SECTION IX

## TERMINATION

A.    This Agreement shall terminate without further action required by any Party (unless otherwise noted below) upon the earliest to occur of the following (each, a "Termination Event"), unless such Termination Event is waived pursuant to Paragraph C below:

        1.    refusal of the Bankruptcy Court (or the District Court, if applicable) to enter the Approval Order following the Liquidating Trustee's reasonable best efforts and a hearing to consider approval of this Agreement if such denial cannot be cured by amending this Agreement or the Approval Order in a manner that is (a) materially consistent with this Agreement or the Plan and (b) agreed to by the Parties;

        2.    any material breach, defined to mean here any breach by the Liquidating Trustee, Liquidating Trust or Small Smiles of any of their undertakings, representations, warranties or covenants as set forth in this Agreement that reduces or impairs the rights or obligations of the Insurers or the protections or releases afforded to the Insurers under this Agreement, which material breach remains uncured for a period of five (5) business days after receipt of notice demanding cure;

        3.    any breach by counsel for the relevant Claimants of any of the provisions of Section VII, Paragraph A or B above, which breach remains uncured for a period of five (5) business days after receipt of notice demanding cure;

        4.    any material breach, defined to mean here any breach by the Insurers of any of their undertakings, representations, warranties or covenants as set forth in this Agreement that reduces or impairs the rights or obligations afforded to the Liquidating Trustee, Liquidating Trust or Small Smiles under this Agreement, which material breach remains uncured for a period of five (5) business days after receipt of notice demanding cure;

        5.    the Liquidating Trustee or the Liquidating Trust proposes any material amendment or modification of the Plan or any Plan-related document, which amendment or modification makes the Plan or any Plan-related document materially inconsistent with the terms of this Agreement, and such material inconsistency remains uncured for a period of five (5) business days after the receipt of notice demanding cure;

- xvii -

6.      the Bankruptcy Court (or the District Court, if applicable) grants relief that is materially inconsistent with this Agreement; or

7.      the Trust Advisory Committee exercises its Option as set forth in Section VIII, Paragraph C above, if and only if the total point value calculated by the Liquidating Trustee for allowable Small Smiles Claims asserted by the Future Claimants under the Trust Distribution Procedures exceeds the thresholds specified therein.

B.      Subject to waiver pursuant to Paragraph C below, upon termination of this Agreement as a result of a Termination Event, each Party shall be released from its commitments, undertakings and agreements under or related to this Agreement, and shall have the rights and remedies that it would have had as of December 11, 2014 and shall be entitled to take all actions that it would have been entitled to take had it not entered into this Agreement. Without limiting the generality of the foregoing, any amount of the up to $1 million of the Settlement Amount paid by the Insurers to the Liquidating Trust in accordance with Section III, Paragraph A above, shall be forfeited by the Insurers upon termination of this Agreement as a result of Termination Events 1, 4 and 7 above. However, the Insurers shall be entitled to a credit in such amount with respect to any future resolution of Small Smiles Claims with the Liquidating Trust. The Insurers reserve all rights to recover, from the Liquidating Trust, the Liquidating Trustee or SSHC, any such payments to the Liquidating Trustee and any other portion of the Settlement Amount paid to the Liquidating Trust on account of termination of this Agreement as a result of Termination Events 2, 3, 5 and 6.

C.      A Termination Event may be waived by the Parties, but no such waiver shall be valid, enforceable or effective unless it is in a writing signed by each of the Parties no later than fifteen (15) business days after the occurrence of the Termination Event or, if applicable, no later than fifteen (15) business days after the corresponding demand for cure. No action taken or made by a Party pursuant to this Agreement shall be construed or operate as an implied or constructive waiver of such Termination Event.

## SECTION X

## REPRESENTATIONS AND WARRANTIES OF THE PARTIES

Each of the Parties separately represents and warrants to each of the other Parties as follows:

A.      It has the requisite power and authority to enter into this Agreement and to perform the obligations contemplated by this Agreement, subject only to the entry of the Approval Order, and in the case of the Liquidating Trustee, subject to the consent of the Trust Advisory Committee;

B.      The execution and delivery of this Agreement, and the performance of the obligations contemplated by this Agreement, have been approved by duly

- xviii -

authorized representatives of the Party, and by all other necessary actions of the Party, subject only to the entry of the Approval Order and in the case of the Liquidating Trustee, the consent of the Trust Advisory Committee;

C.      It has expressly authorized its undersigned representative to execute this Agreement on the Party's behalf as its duly authorized agent;

D.      The making and performance of this Agreement will not violate any provision of the Party's respective articles of incorporation, membership agreement, charter or bylaws, where applicable;

E.      It has read the entire Agreement and knows the contents hereof; it understands that the terms hereof are contractual and not merely recitals; it has signed this Agreement of its own free act and will; and in making this Agreement, it has obtained the advice of its own legal counsel;

F.      It has not previously assigned or transferred, or purported to assign or transfer to any other Person, any right or Claim that is the subject matter of this Agreement; and

G.      This Agreement has been negotiated, executed and delivered in good faith, with the assistance of its own legal counsel, pursuant to good faith arm's-length negotiations, and for good and valuable consideration.

H.      The Parties are not aware of the existence of Current Claims other than the Claimants identified in the mediation process leading to this Agreement.

## SECTION XI

## OTHER PROVISIONS

A.      **Informed Consent and Knowledge**.  The Parties expressly warrant and represent that they have had the benefit of the professional advice of attorneys of their own choosing, that they are fully satisfied with that advice and that they have not relied on any statement or representation of other Parties to this Agreement regarding the specific matters in dispute.  The Parties also represent and acknowledge that, in executing this Agreement, they do not rely and have not relied upon any representation or statement made by any other Party or any of their agents, representatives or attorneys, with regard to the subject matter, basis or effect of this Agreement or otherwise, other than as specifically stated in this Agreement.

B.      **No Precedent**.  The Parties stipulate that they have entered into this Agreement only for their own business reasons based on the unique circumstances presented by the Settled Claims, and that this Agreement creates no binding legal or factual precedent for themselves or others in any future case.  This Agreement does not constitute an admission of coverage or noncoverage, and is not based upon language in the Policies.

- xix -

C.     **Confidentiality**.  The Parties agree, subject to any disclosure obligations imposed by law, to hold this Agreement confidential and not to disclose the terms of this Agreement to any third party (except as to Affinity, the Trust Advisory Committee, counsel for the Current Claimants or defense counsel for the Insureds and the Clinic Dentists provided they agree to keep this Agreement confidential) until the Liquidating Trustee files this Agreement with the Bankruptcy Court (or the District Court, if applicable); provided, however, that after the Execution Date, the Parties, as well as counsel for the Current Claimants and defense counsel for the Insureds and the Clinic Dentists, may generally inform the Bankruptcy Court or any other court of competent jurisdiction that the Parties have entered into this Agreement; provided, further, that the Parties may disclose the fact that they have reached a settlement, the settlement amount and such other terms of this Agreement as may be reasonably necessary or appropriate to implement this Agreement.

D.     **Cooperation**.  Each Party agrees to take such steps and to execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Agreement and to preserve its validity and enforceability.  In the event that any action or proceeding of any type whatsoever is commenced or prosecuted by any Person not a Party hereto to invalidate, interpret or prevent the validation, enforcement or carrying out of all or any of the provisions of this Agreement, the Parties mutually agree, represent, warrant and covenant to cooperate in opposing such action or proceeding.

E.     **Entire Agreement**.  This Agreement sets forth the entire agreement between the Parties and fully supersedes any and all prior agreements and understandings, written or oral, between and among the Parties pertaining to the subject matter hereof.    Except as explicitly set forth in this Agreement, there are no representations, warranties, promises or inducements, whether oral, written, expressed or implied, that in any way affect or condition the validity of this Agreement or alter or supplement its terms.  Any statements, promises or inducements, whether made by any Party or the agent of any Party, that are not contained in this Agreement shall not be valid or binding.  This Agreement shall have perpetual existence, except as otherwise provided herein.

F.     **Amendment/Modification**.  No amendment or modification of this Agreement shall be binding or enforceable unless in writing and signed by the Parties and, if required, approved by the Bankruptcy Court (or the District Court, if applicable).

G.     **Construction**.  This Agreement is the jointly-drafted product of good faith arm's-length negotiations between the Parties with the benefit of advice from their own respective legal counsel and each of them has had sufficient opportunities to propose and negotiate changes to this Agreement prior to its execution.  As such, no Party will claim that any ambiguity in this Agreement shall be construed against any other Party by reason of their identity as a drafter or insurer.  The following rules of construction shall also apply to this Agreement:

1. The Recitals and Definitions to this Agreement are a material part of this Agreement having the same force and effect as a mutual representation, warranty and covenant of the Parties;

2. Unless the context of this Agreement otherwise requires: (a) words of any gender include each other gender, and the word "it" may refer to a Person as the context requires; (b) words used in the singular or plural also include the plural or singular number, respectively; (c) the terms "hereof," "herein," "hereby" and derivative or similar words refer to this entire Agreement; (d) the words "include," "includes" or "including" shall be deemed to be followed by the words "without limitation"; (e) the word "or" shall be disjunctive but not exclusive; (f) the words "any" or "all" shall mean "any and all";

3. References to Policies, agreements and other documents shall be deemed to include all subsequent amendments and other modifications thereto; and

4. References to statutes shall include all regulations promulgated thereunder and references to statutes or regulations shall be construed as including all statutory and regulatory provisions consolidating or amending or replacing the statute or regulation.

H. **Applicable Law**. This Agreement shall be interpreted and construed in accordance with the laws of the State of Tennessee, without regard to the conflict of laws of the State of Tennessee, except to the extent that any particular provision hereof may be governed by the Bankruptcy Code and Bankruptcy Rules. Each of the Parties hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court with respect to any action to enforce the terms and provisions of this Agreement, and expressly waives any right to commence any such action in any other forum (unless the Bankruptcy Court does not have or refuses to exercise such jurisdiction). In any dispute arising from this Agreement, the Parties hereby waive any right to a jury trial. This Agreement is intended to be and shall have the effect of a document executed under seal in accordance with the laws of the State of Tennessee.

I. **No Admissions/Not Evidentiary**. Except as provided herein, this Agreement is not and shall not be construed as an admission or concession of coverage, responsibility, liability, non-liability or wrongdoing by any Party to this Agreement. Except for purposes of enforcing this Agreement or as a defense to Settled Claims, only, no part of this Agreement may be used in any action or proceeding as evidence of the rights, duties or obligations of any Insurer under the Policies or otherwise.

J. **Successors and Assigns**. Except as expressly provided in this Agreement, neither this Agreement nor any of the rights and obligations set forth herein shall be assigned by any Party without the prior written consent of the other Parties, which consent shall not be unreasonably withheld.

K.    **No Rights of Third Parties**.   All Persons expressly included within the definitions of "Insureds," "Clinic Dentists", "National Union," "Insurers," "Affinity," "Liquidating Trust" and "Liquidating Trustee" are intended beneficiaries of this Agreement.   The Parties agree that, except as set forth in the prior sentence or otherwise expressly set forth in this Agreement, there are no intended third-party beneficiaries to this Agreement.

L.    **Enforcement of Agreement**.   The Parties hereby acknowledge that money damages would be both incalculable and an insufficient remedy for any breach of this Agreement by any Party and that such breach shall cause the non-breaching Parties irreparable harm.   Accordingly, the Parties agree that in the event of any breach or threatened breach of this Agreement by any of the Parties, the Parties, in addition to any other remedies at law or in equity that they may have, shall be entitled, without the requirement of posting a bond or other security, to equitable relief, including injunctive relief and specific performance.

M.    **Captions and Headings**.   Captions and headings to paragraphs or sections in this Agreement are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof.

N.    **Notice to Parties**.   Unless another Person is designated in writing for receipt of notices hereunder, notices to the respective Parties shall be sent to the following Persons to the extent so designated below.   All notices shall be sent via email and by either (1) overnight mail, or (2) certified mail, and shall be deemed effective upon receipt.

    1.    <u>Notice to Liquidating Trustee</u>:

        Daniel B. Lain
        Lain, Faulkner & Co.
        400 N. St. Paul, Suite 600
        Dallas, Texas 75201
        dlain@lainfaulkner.com

        With a copy to:
        Kami Quinn
        Gilbert LLP
        1100 New York Ave., NW, Suite 700
        Washington, DC 20005
        QuinnK@gotofirm.com

Case 3:10-cv-00743   Document 372-1   Filed 06/26/15   Page 22 of 64 PageID #: 14406

2.    <u>Notice to the Insurers</u>:

      Monica Steele, AVP
      Healthcare Malpractice Claims
      AIG Claims, Inc.
      101 Hudson Street, 28th Floor
      Jersey City, NJ 07302
      monica.steele@AIG.com

      With a copy to:
      Lawrence Klein
      Sedgwick LLP
      225 Liberty Street, 28th Floor
      New York, NY 10281
      lawrence.klein@sedgwicklaw.com

O.    **Execution and Delivery**.  This Agreement may be executed in one or more counterparts, all of which together shall constitute one and the same instrument. This Agreement may be executed and delivered by email (via .pdf file), which shall be deemed the same as originals.

**[Signature Page Follows]**

**IN WITNESS WHEREOF**, and intending to be legally bound hereby, the undersigned Parties have each approved and executed this Agreement.


**LIQUIDATING TRUSTEE, ON BEHALF OF**
**THE LIQUIDATING TRUST AND SMALL SMILES**

BY: *Dan Lain*

DATE: 4/29/2015


**AIG CLAIMS, INC., ON BEHALF OF**
**THE INSURERS**

BY:

TITLE:

DATE:

IN WITNESS WHEREOF, and intending to be legally bound hereby, the undersigned Parties have each approved and executed this Agreement.


LIQUIDATING TRUSTEE, ON BEHALF OF
THE LIQUIDATING TRUST AND SMALL SMILES

BY: _____
DATE: _____


AIG CLAIMS, INC., ON BEHALF OF
THE INSURERS

BY: _____
TITLE: _____ _SVP - Healthcare resolution claims_ _____
DATE: _____ 4/29/15 _____

**EXHIBIT A**

Approval Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| IN RE: | Chapter 11 |
| CS DIP, LLC (f/k/a Church Street Health Management, LLC), | Case No. 12-01573 |
| SSHC DIP, LLC (f/k/a Small Smiles Holding Company, LLC), | Case No. 12-01574 |
| FNY DIP, LLC (f/k/a FORBA NY, LLC), | Case No. 12-01575 |
| Debtors.[1] | (Jointly Administered under Case No. 12-01573) |

**ORDER (A) APPROVING SETTLEMENT WITH NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., (B) GRANTING INJUNCTION, AND (C) APPROVING OF TRUST DISTRIBUTION PROCEDURES**

Upon the motion, dated April __, 2015 (the "**Motion**"),[2] of Dan B. Lain, solely in his capacity as Liquidating Trustee (the "**Liquidating Trustee**") of the trust established by the Second Amended Joint Plan of Reorganization and Liquidating Trust Agreement dated April 13, 2013, the Qualified Settlement Fund Trust, and Small Smiles, pursuant to Sections 105 and 363 of the Title 11 of the United States Code (the "**Bankruptcy Code**") and Federal Rules of Bankruptcy Procedure 6004 and 9019, for entry of an Order (a) approving the Settlement and Release Agreement (the "**Agreement**") with the Insurers concerning the insurance policies defined herein, (b) authorizing the Liquidating Trust to sell certain insurance policies and policy rights to the Insurers pursuant to the authority granted to the Liquidating Trustee in the Plan

---

[1] The Debtors, jointly administered under Case No. 12-01573 are: CS DIP, LLC (f/k/a Church Street Health Management, LLC) (Case No. 12-01573), SSHC DIP, LLC (f/k/a Small Smiles Holding Company, LLC) (Case No. 12-01574), FNY DIP, LLC (f/k/a FORBA NY, LLC) (Case No. 12-01575), FS DIP, INC. (f/k/a FORBA Services, Inc.) (Case No. 12-01577) and EE DIP, INC. (f/k/a EEHC, Inc.) (Case No. 12-01576) (collectively, the "**Debtors**").

[2] Unless otherwise provided in this Order, capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement, a copy of which is attached to this Order, or, if not defined in the Agreement, capitalized terms shall have the meaning ascribed to them in the Plan.

(defined below) and/or under Section 363 of the Bankruptcy Code, as applicable, as set forth in the Agreement, (c) permanently barring and enjoining all claims against the Insurers under such insurance policies, and channeling any such claims exclusively to the proceeds of the Agreement, which are to be paid to the Liquidating Trustee, all as more fully set forth in the Agreement, and (d) approving of the Trust Distribution Procedures; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief requested in the Motion is in the best interests of the Liquidating Trustee, the debtors' estates and creditors, and that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby:

**FOUND AND DETERMINED THAT:**[3]

**JURISDICTION**

A.      This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and pursuant to the retention of jurisdiction in the Second Amended Joint Plan of Reorganization in the above captioned case (the "**Plan**").

B.      Consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.      Venue is proper in this District and this Court under 28 U.S.C. §§ 1408 and 1409.

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to this proceeding pursuant to Federal Rule of Bankruptcy Procedure 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

## NOTICE OF MOTION

D.      The Liquidating Trustee has served notice of the Motion, including a copy of the Motion with the Agreement and the form of this proposed Order, together with notice of the time and place of the Hearing: (i) upon all parties who requested notice in the Bankruptcy Case; (ii) to all known Claimants (through their counsel); (iii) to the Dental Clinics at their last known operating address; (iv) to all known insurers with an interest other than the Insurers; and (v) to counsel for the following individuals: Danny DeRose, Edward DeRose, Michael DeRose, William Mueller, Michael Roumph, Richard Lane, Adolph Padula, Monica Switzer, and Giang Pham.

E.      The Liquidating Trustee has filed a Motion of the Liquidating Trustee to Approve Additional Notice Procedure Including Publication of Notice of Approval of Settlement Agreement and Related Injunction, Trust Distribution Procedures, and Claims Filing Deadline (the "Notice Motion").  Additional notice shall be provided as set forth in the order granting the Notice Motion (the "Order Granting Notice Motion").

F.      As evidenced by the certificates of service filed with the Court, concerning service under Paragraph D herein, together with compliance with the Order Granting Notice Motion, the Liquidating Trustee shall have provided proper, timely, adequate, and sufficient notice of the Motion, and of the further right to object or respond to the Motion, and such notice will have been provided in accordance with the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, including Federal Rule of Bankruptcy Procedure 9019, and any applicable local rules.

G.      Such notice is good, sufficient and appropriate under the particular circumstances.  Upon compliance with paragraphs D and the Order Granting Notice Motion, fair and reasonable opportunity to object or be heard with respect to the Motion and the relief granted by this Order shall have been afforded to all persons and entities with an interest in the Policies whose identities and/or addresses are presently known to the Liquidating Trustee.  The Liquidating Trustee shall, upon compliance with paragraphs D and the Order Granting Notice Motion, have made a diligent effort to serve and notify all persons in interests and all those whose possible interest is reasonably predictable.  No other or further notice of the Motion, the Hearing, the Agreement or entry of this Order is reasonable under the circumstances, necessary or required and such notice is adequate as to all parties in interest, whether known or unknown.

## <u>AUTHORITY UNDER THE PLAN AND LIQUIDATING TRUST AGREEMENT</u>

H.      Section 4.17 of the Plan authorizes the Liquidating Trustee to execute the Liquidating Trust Agreement to establish the Liquidating Trust for the benefit of, inter alia, the Claimants and to exercise and discharge all rights and obligations as to any insurance policies affording coverage to the Insureds and the Clinic Dentists, including the SSHC Policies and the Non-SSHC Policies, in connection with the Small Smiles Claims.

I.      The Plan, including Section 4.17, further authorizes the Liquidating Trust in connection with any resolution of Insurance Rights to compromise, settle and release any claims or potential claims by the Claimants, the Insureds and the Clinic Dentists against any insurer relating to the Small Smiles Claims, subject to approval by the Trust Advisory Committee and approval by the Bankruptcy Court after notice and hearing.  Pursuant to the Plan, the Liquidating Trust has the right and power to bind Claimants to the settlement of Insurance Rights set forth in the Agreement.

Case 3:10-cv-00743   Document 372-1   Filed 06/26/15   Page 30 of 64 PageID #: 14414

J.      The Agreement effectuates a settlement and release of the Settled Claims under the SSHC Policies and Non-SSHC Policies.

K.      Section 4.17(g) of the Plan provides that the Liquidating Trustee "may, subsequent to the Effective Date, implement a structure for the submission, review and allowance of Class 5(a) Claims, and/or for the procedures for distribution from the Liquidating Trust to holders of Allowed Class 5(a) Claims."

L.      Section 4.17(g) further provides that "[a]ny such Claim Approval Structure and/or Claim Distribution Procedures shall require approval by the Trust Advisory Committee, and by the Bankruptcy Court (after notice and hearing) and be subject to such other approvals as provided for in the Liquidating Trust Agreement."

M.      The Agreement provides that the Liquidating Trustee will seek approval of Trust Distribution Procedures pursuant to the terms of the Plan and of the Liquidating Trust Agreement.

N.      The Motion seeks approval of the Trust Distribution Procedures.  The Agreement and the Trust Distribution Procedures are the exclusive source of payment to Claimants for Small Smiles Claims under the SSHC Policies and Non-SSHC Policies.

O.      The Trust Advisory Committee has consented to the Agreement and to the Trust Distribution Procedures.

## THE COVERAGE CASE

P.      Prior to the petitions that commenced the Bankruptcy Case, certain of the Insureds and the Clinic Dentists had Small Smiles Claims asserted against them.

- xxx -

Q.      Some or all of the Insureds and Clinic Dentists named as defendants in lawsuits asserting Small Smiles Claims tendered to the Insurers the defense and indemnity of those matters under the SSHC Policies or the Non-SSHC Policies.

R.      The Insurers agreed to participate in the defense of some or all of their Insureds and Clinic Dentists named as defendants in lawsuits asserting Small Smiles Claims subject to a full and complete reservation of all rights.

S.      The Insurers commenced a lawsuit in the United States District Court for the Middle District of Tennessee, styled *National Union Fire Insurance Company of Pittsburgh, PA v. Small Smiles Holding Company*, LLC, Civil Action No. 3:10-cv-00743, seeking to rescind or reform the SSHC Policies (the "Coverage Litigation").

T.      SSHC commenced a related third-party action against Affinity Insurance Services, Inc. in the United States District Court for the Middle District of Tennessee, styled *National Union Fire Insurance Company of Pittsburgh, PA v. Small Smiles Holding Company, LLC v. Affinity Insurance Services, Inc.*, Civil Action No. 3:10-cv-00743.

U.      The Liquidating Trustee and Insurers disagree as to whether and to what extent the Policies obligate the Insurers to provide insurance coverage for certain claims and damages arising out of the Small Smiles Claims.

V.      The Liquidating Trustee and Insurers' dispute over insurance coverage is a bona fide, genuine, and substantial dispute.

## SOUND BUSINESS JUDGMENT AND REASONABLENESS OF THE AGREEMENT

W.    The Liquidating Trustee, on behalf of the Liquidating Trust and Small Smiles, and the Insurers engaged in good faith settlement discussions among themselves and with advice of members of the Trust Advisory Committee in an effort to fully and finally resolve the Insurance Rights, and further to compromise and resolve potential claims against the Insurers arising out of the Insureds' and the Clinic Dentists' potential liability for the Small Smiles Claims asserted or which could be asserted in the future.

X.    The settlement effected by the Agreement meets the standard established for approval of settlements, which requires consideration of the following factors:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In re Bard*, 49 Fed. Appx. 528, 530 (6th Cir. 2002) (quoting *LaSalle Nat'l Bank v. Holland (In re Am. Reserve Corp.)*, 841 F.2d 159, 162-63 (7th Cir. 1987)) (citing *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir. 1929)); *see also In re Greektown Holdings, LLC*, 728 F.3d 567, 575-76 (6th Cir. 2013) ("*Bard* sets out four factors that a bankruptcy court should consider when evaluating fairness of a settlement."); *In re Tech. for Energy Corp.*, 56 B.R. 307, 312 (Bankr. E.D Tenn. 1985).

Y.    The Liquidating Trustee and the Insurers believe that, if their disputes and other remaining issues are not resolved now, future proceedings would be protracted and

expensive, involve complex issues of liability and/or damages and involve substantial expense and the uncertainties and risks inherent in litigation.

Z. The Liquidating Trustee and Insurers negotiated the Agreement in good faith and at arm's length to resolve disputed claims in compliance with all applicable laws. The compromise and settlement memorialized in the Agreement are not the product of fraud or collusion.

AA. The Agreement represents an informed, sound exercise of the Liquidating Trustee's and the Liquidating Trust's business judgment.

BB. The authority granted to the Liquidating Trustee under the Plan, including authority granted under sections 4.17 and 4.18, authorizes the Trustee to sell each of the SSHC Policies and any claims for coverage relating to the Small Smiles Claims under the Non-SSHC Policies free and clear of any rights or interests of any Persons, including claims against the Insurers for indemnity, contribution, or other liability based upon or attributable to the Policies or the Small Smiles Claims. The Liquidating Trustee's sale of each of the SSHC Policies and any claims for coverage relating to the Small Smiles Claims under the Non-SSHC Policies to the Insurers pursuant to the Agreement constitutes a legal, valid and effective transfer of the Policies, negotiated in good faith, and shall vest the Insurers with all right, title and interest in the Policies free and clear of all interests. Pursuant to the Plan, the sale of each of the SSHC Policies and any claims for coverage relating to the Small Smiles Claims under the Non-SSHC Policies is a material part of the settlement of the Insurance Rights and shall be binding upon all Persons, who have held or asserted, hold or assert, or who may in the future hold or assert any claim or interest of any kind, including claims by other insurers who may seek to assert any form of contribution,

indemnification or other third-party claims,  against or in the SSHC Policies or the Non-SSHC

Policies, with respect to any and all Insurance  Rights sold and/or released under the Agreement.

CC.     Considering all of the circumstances of the Debtors' chapter 11 cases, the

Agreement is fair and equitable, reasonable, and in the best interests of the Liquidating Trust, the

Debtors' estates and creditors.  The Liquidating Trustee has demonstrated good, sufficient, and

sound business purposes and justifications for the relief requested in the Motion.  The settlement

and compromise with Insurers embodied in the Agreement are consistent with and within the

reasonable range of litigation outcomes if the Liquidating Trustee were to litigate the matters

resolved pursuant to this Order.

DD.     The sale of Insurance Rights, the Releases set forth in Section VI of the

Agreement and the Plan Injunction are each being proposed in good faith.  Further, the sale of

Insurance Rights, the Releases set forth in Section VI of the Agreement and the Plan Injunction

requested by the Liquidating Trust to effectuate and implement the Agreement are appropriate.

EE.     The consideration to be paid by Insurers under the Agreement is fair,

equitable, and reasonable to the Liquidating Trust and to all persons who hold interests in the

Liquidating Trust for all relevant purposes under the Bankruptcy Code, including the Patient

Interests as the term is defined in the Plan, and constitutes reasonably equivalent value.

FF.     The Entities Policies are exhausted by payment of the Payment Amount

under the Agreement.

## FAIRNESS AND REASONABLENESS OF THE TRUST DISTRIBUTION
## PROCEDURES

GG.     The Agreement, the form of this Order and Trust Distribution Procedures have been approved by the Trust Advisory Committee and are being proposed in good faith.

HH.     The Trust Distribution Procedures are a fair and reasonable method for ensuring that the Claimants receive the benefit of the Settlement Payment. The Trust Distribution Procedures further provide an efficient method for allocating funds fairly among Claimants while minimizing the costs such Claimants must bear to establish their claims.

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.     The Motion is GRANTED.

2.     The settlement as set forth in the Agreement is approved.

3.     All objections to the Motion filed prior to the date of this Order or the relief requested therein that have not been withdrawn, waived, or settled, and all reservation of rights included in such objections, are overruled on the merits. With respect to the parties served pursuant to Paragraph D herein, to the extent that objections were not filed by the objection deadline set forth in the Motion, such parties have waived their right to object to the Motion.

4.     Further, if any objections are filed pursuant to the notices approved by the Order Granting Notice Motion, the Court will conduct a hearing and, to the extent necessary, modify this order as may be appropriate. This Order shall be final, effective and enforceable upon the earlier of: (1) entry of this Order and no objections being filed by the time required in the notices approved by the Order Granting Notice Motion; or (2) entry of this Order

and this Court overruling any objection filed pursuant to the notices approved by the Order Granting Notice Motion.

5.      The Liquidating Trustee is authorized to enter into and consummate the Agreement.  The Liquidating Trustee, on the one hand, and the Insurers, on the other hand, are each hereby authorized to take all actions and execute all documents and instruments that the Liquidating Trustee and the Insurers deem necessary or appropriate to implement and effectuate the transactions contemplated by the Agreement.

6.      As provided in the Agreement, upon payment by the Insurers of the Settlement Amount and regardless of any subsequent events: (1) all provisions of the Agreement will be final and binding; (2) the Entities Policies are exhausted by payment of the Settlement Amount, which is in excess of the full amount of the aggregate coverage limits of all the Entities Policies combined; (3) each of the SSHC Policies are deemed to be bought-out by the Insurers free and clear of all other interests pursuant to the Plan and/or Section 363 of the Bankruptcy Code, as applicable; (4) the Insureds and Claimants are each deemed to have released the Insurers from any further payment obligations under the SSHC Policies; (5) any claims for coverage relating to the Small Smiles Claims under the Non-SSHC Policies are deemed to be bought out by the Insurers free and clear of all interests  pursuant to the Plan and/or Section 363 of the Bankruptcy Code, as applicable; and (6) the Clinic Dentists and Claimants are each deemed to have released the Insurers from any further payment obligations under the Non-SSHC Policies for any claims for coverage relating to the Small Smiles Claims.

7.      The Trust Distribution Procedures are approved.  Pursuant to the Trust Distribution Procedures, by _____ all claimants holding Trust Claims must file a Trust Claim with the Trust in accordance with the proof of claim provisions of Section 5.1(a)

and Section 5.1(b) of the Trust Distribution Procedures to receive a distribution. The Trust shall process all such timely claims pursuant to the procedures set forth in the Trust Distribution Procedures.

8. Upon payment of the Settlement Amount by the Insurers, all Persons are hereby permanently and forever barred, estopped and enjoined from asserting against the Insurers any Settled Claims, in any way whatsoever, whether known or unknown, whether foreseen or unforeseen, whether contingent or actual, whether direct or indirect, liquidated or unliquidated, whether statutory or common law, whether asserted or unasserted and whether based on contract, negligence, bad faith, willful, wanton or malicious conduct, or any other theory in law or equity concerning, arising from or relating to any actual or alleged past, present or future act, omission, defect, incident, event or circumstance from the beginning of the world to the Effective Date, including but not limited to claims for contribution or indemnity, in any way relating to or in connection with (i) the Debtors, (ii) any dental treatment rendered or failed to be rendered at any of the dental clinics that was under or is claimed to have been under a management agreement with the Debtors during the effective dates of the SSHC Policies and/or is scheduled as an insured, named insured or additional insured under any of the Policies, (iii) the Agreement and/or the Policies.

9. Upon the sale to the Insurers of the SSHC Policies and of any claim for coverage relating to the Small Smiles Claims under the Non-SSHC Policies, no Person may assert any claim of any kind against the Insurers arising from or relating thereto.

10. Upon payment of the Settlement Amount, all releases set forth in the Agreement are approved and shall be permanent.

11. The Court shall retain jurisdiction to hear and determine all matters, claims, rights or disputes arising from or related to the implementation of this Order and any disputes relating to the Agreement.

Dated: _____, 2015

_____
U. S. B. J.

## EXHIBIT B

### Liquidation Matrix

| Treatment Category | Points for Pre-Notice Claimants | Points for Post-Notice Claimants | Treatment/Procedure Criteria |
|---|---|---|---|
| Category 1 | 1.3 points | 0.91 point | (1) Restraint used; (2) Procedures performed; (3) no local anesthesia used during the Procedures; and (4) no nitrous oxide used during the Procedures. |
| Category 2 | 1.2 points | 0.84 point | (1) Restraint used; (2) Procedures performed; (3) no local anesthesia used during the Procedures; and (4) nitrous oxide used during the Procedures. |
| Category 3 | 1.0 point | 0.70 point | (1) Restraint used; (2) Procedures performed; (3) local anesthesia used during the Procedures; and (4) no nitrous oxide used during the Procedures. |
| Category 4 | 0.9 point | 0.63 point | (1) Restraint used; (2) Procedures performed; (3) local anesthesia used during the Procedures; and (4) nitrous oxide used during the Procedures. |
| Category 5 | 0.8 point | 0.56 point | (1) Restraint used; and (2) no Procedures performed. |
| Category 6 | 0.5 point | 0.35 point | (1) Procedures Performed; (2) no local anesthesia used during the Procedures; and (3) no nitrous oxide used during the Procedures. |

| | | | |
|---|---|---|---|
| Category 7 | 0.4 point | 0.28 point | (1) Procedures Performed; (2) no local anesthesia used during the Procedures; and (3) nitrous oxide used during the Procedures. |
| Category 8 | 0.2 point | 0.14 point | (1) Procedures Performed; (2) local anesthesia used during the Procedures; and (3) no nitrous oxide used during the Procedures. |
| Category 9 | 0.1 point | 0.07 point | (1) Procedures Performed; (2) local anesthesia used during the Procedures; and (3) nitrous oxide used during the Procedures. |
| Category 10 | 0.05 point | 0.035 point | (1) Single tooth extraction only; and (2) no local anesthesia used during the Procedure. |

**EXHIBIT C**

**Claimant Release**


1. By submitting this Claim Form, and effective upon payment of the Settlement Amount by the Settled Insurers to the Trust, claimant releases any and all Trust Claims, known or unknown, that such claimant has asserted or may be entitled to assert against the Settled Insurers.

2. By submitting this Claim Form, claimant releases any and all claims against the CS DIP Liquidating Trust pursuant to HIPPA or any related statute with respect to the release of such claimant's medical or dental records as may be necessary to process the claimant's Trust Claim.

3. By submitting this Claim Form, and effective upon payment of the Settlement Amount by the Settled Insurers to the Trust, claimant acknowledges that any and all Trust Claims, known or unknown, that such claimant has asserted or may be entitled to assert against any Dental Clinic, Clinic Dentist who provides a sworn statement that they in good faith believe they have or had a right to coverage under any of the Policies, or related Entities insured by the Settled Insurers are rendered non-recourse, as provided in Section 4.17 of the Plan.


_____
Signature of Claimant or Claimant's Counsel on Claimant's behalf


Printed Name of Signatory


Date

# CS DIP LIQUIDATING TRUST
# CLAIM DISTRIBUTION PROCEDURES

**CS DIP LIQUIDATING TRUST**
**CLAIM DISTRIBUTION PROCEDURES**


<u>**TABLE OF CONTENTS**</u>

<u>Page</u>

- xliii -

**CS DIP QUALIFIED SETTLEMENT FUND TRUST**

**CLAIM DISTRIBUTION PROCEDURES**

These CS DIP Qualified Settlement Trust Claim Distribution Procedures ("TDP") provide for resolving (i) Patient-Related Claims, (ii) Claims against any Clinic Dentists or Insureds that may be responsible for Claims arising from the same circumstances that give rise to any Patient-Related Claims, and (iii) any Claims asserted by holders of a Claim referenced in (i) or (ii) above[4] as provided in and by the Plan and the Trust Agreement (hereinafter for all purposes of this TDP, the "Trust Claims").

The Plan and Trust Agreement establish the Trust. The Trustee of the Trust shall implement and administer this TDP in accordance with the Trust Agreement. Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Plan and the Trust Agreement.

**SECTION I**

**Definitions**

The following definitions will apply to the listed terms wherever those terms appear in this TDP. Unless otherwise specified, each defined term stated in singular form shall include the plural form, and each defined term stated in plural form shall include the singular form. The terms "includes" and "including" wherever used in this TDP shall mean both includes or including, both without limitation.

---

[4] Notwithstanding the above, this TDP shall not resolve any Patient-Related Claims, Claims against Clinic Dentists or Insureds arising from the same circumstances as Patient-Related Claims, or Claims asserted by holders referenced in such foregoing claims, filed against FORBA LLC, FORBA NY LLC, DeRose Management Company, DD Marketing, Inc., Danny DeRose, Edward DeRose, Michael DeRose, William Mueller, Michael Roumph, Richard Lane, or Adolph Padula.

- xliv -

**1.1** **"Associated Claim Value"** means the percentage of the Liquidated Trust Claim Amount attributable to each Qualifying Event.

**1.2** **"Attorneys' Fees"** means those fees owed to a claimant's counsel for his or her services in representing such claimant. Attorneys' Fees shall include incurred fees as well as incurred expenses, as specified by claimant's counsel in the proof of claim form. Attorneys' Fees shall be paid from the Liquidated Trust Claim Amount plus the Liquidated Extraordinary Claim Amount, if applicable, subject to the applicable payment caps outlined in Section 5.1(e)(5) of this TDP.

**1.3** **"Claimant Payment Fund"** means the fund from which all Trust Claims shall be paid, as described in Section 5.1(e)(1) of this TDP.

**1.4** **"Claim Deadline"** means [   ], 2015.

**1.5** **"Clinic Dentists"** means any dentist who was employed at one of the Dental Clinics during the effective dates of the SSHC Policies and/or is scheduled as an insured, named insured or additional insured at any time under any of the Non-SSHC Policies. Notwithstanding the foregoing, Clinic Dentists shall not include any of the following individuals: Danny DeRose, Edward DeRose, Michael DeRose, William Mueller, Michael Roumph, Richard Lane or Adolph Padula.

**1.6** **"Debtor"** means one or more of CS DIP, LLC, SSHC DIP, LLC, and FNY DIP, LLC.

**1.7** **"Dental Clinic"** means any dental clinic that was under or is claimed to have been under a management agreement with one or more of the Debtors and/or is scheduled as an insured, named insured or additional insured under any of the SSHC Policies.

**1.8** **"Execution Date"** means the first date upon which the Settled Insurers and the Trust have executed the Settlement and Release Agreement and it is approved by the TAC.

**1.9** **"Extraordinary Claim"** means a Trust Claim that otherwise satisfies the Treatment Criteria, and in addition establishes the applicability of one or more of the Qualifying Events.

**1.10** **"Extraordinary Injury Fund"** means an amount of $1,000,000 set aside by the Trust to pay Extraordinary Claims.

**1.11** **"Insureds"** means Small Smiles Holding Company (n/k/a SSHC DIP, LLC), any Dental Clinic and any of the insureds, named insureds and additional insureds scheduled at any time under any of the SSHC Policies. Notwithstanding the foregoing, Insureds shall not include any of the following individuals: Danny DeRose, Edward DeRose, Michael DeRose, William Mueller, Michael Roumph, Richard Lane or Adolph Padula.

**1.12** **"Liquidated Extraordinary Claim Amount"** means the liquidated value of a claimant's Extraordinary Claim.

**1.13** **"Liquidated Trust Claim Amount"** means the liquidated value of a claimant's Trust Claim.

**1.14** **"Non-SSHC Policies"** means except as to the SSHC Policies any insurance policies issued by or on behalf of the Settled Insurers affording dental professional liability insurance coverage or any such similar professional liability coverage to any of the dentists scheduled under such policies as an insured, additional insured or named insured at any time who is or was employed at any time at any of the Dental Clinics.

**1.15** **"Notice Determination Date"** means either (a) December 11, 2014; or (b) the Execution Date. The Notice Determination Date shall be selected by the TAC. If the TAC does not affirmatively select the alternative date, the Notice Determination Date shall be December 11, 2014.

**1.16** **"Plan"** means the Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code of the Debtors and the Official Committee of Unsecured Creditors dated as of April 13, 2013.

**1.17** "Policies" means, collectively, the SSHC Policies and the Non-SSHC Policies.

**1.18** **"Post-Notice Trust Claims"** means those Trust Claims which are held by claimants who, as of the Notice Determination Date, are not Represented by Counsel.

**1.19** **"Pre-Notice Trust Claims"** means those Trust Claims which are held by claimants who, as of the Notice Determination Date, are Represented by Counsel.

**1.20** **"Procedure"** means any dental procedure performed at a Dental Clinic. However, the following do not constitute a Procedure and shall not receive any point allocation in the determination of the Liquidated Trust Claim Value: (1) procedures performed under general anesthesia; (2) the placing of a sealant on any tooth; (3) x-rays; (4) a dental cleaning where no work was performed on a claimant's teeth and no Restraint was used ; (5) a limited or complete oral evaluation performed by a dentist or by a dental assistant; or (6) a treatment plan developed for the claimant by a Dental Clinic dentist.

**1.21** **"Qualified Dentist"** means a dentist, currently or previously licensed to practice dentistry and who has provided regular care to dental patients aged twelve or younger. To become a Qualified Dentist, the dentist shall submit a sworn affidavit certifying that he or she has never had his or her license revoked and has provided regular care to dental patients aged twelve or younger.

**1.22** **"Qualifying Events"** means those medical or dental conditions or medical or dental treatments forming the basis of a claimant's Extraordinary Claim, as outlined in Section 5.3 of this TDP.

- xlvi -

**1.23** **"Represented by Counsel"** means a claimant who, on the proof of claim form, includes a certification from his or her counsel stating that as of the Notice Determination Date, such counsel had an enforceable attorney-client contract with the claimant and had requested the claimant's dental records related to the claimant's treatment at any Dental Clinic.

**1.24** **"Restraint"** means the use of a stabilization board to limit the claimant's freedom of movement during the dental examination or treatment.

**1.25** **"Review Process"** means the claim liquidation process used by the Trust to process and liquidate all Trust Claims, as described in Section 5.2 of this TDP.

**1.26** **"Settled Insurers"** means those insurance carriers who, by [DATE], have reached an agreement with the Trust resolving their obligations for, among other things, Trust Claims. Settled Insurers shall include National Union Fire Insurance Company of Pittsburgh, PA, any other member underwriting company of American International Group, Inc., and AIG Claims, Inc.

**1.27** **"SSHC Policies"** means the following policies issued by National Union Fire Insurance Company of Pittsburgh, PA to Small Smiles Holding Company (n/k/a SSHC DIP, LLC), as the first named insured: (1) Dentists Liability Policy No. DNU3375848 for the policy period of September 26, 2009 to September 26, 2010; (2) Dentists Liability Policy No. DNU3375848 for the policy period of September 26, 2008 to September 26, 2009; (3) Dentists Liability Policy No. DNU6360128 for the policy period of December 1, 2009 to December 1, 2010; and (4) Dentists Liability Policy No. DNU6360128 for the policy period of December 1, 2008 to December 1, 2009.

**1.28** **"TAC"** means the Trust Advisory Committee.

**1.29** **"Treatment Categories"** means the ten treatment/procedure categories described in Section 5.2(c) of this TDP, used to establish the Liquidated Trust Claim Value of a Trust Claim.

**1.30** **"Treatment Criteria"** means the requirements to establish a Trust Claim, outlined in Section 5.2(b) of this TDP.

**1.31** **"Trust"** means the CS DIP Liquidating Trust and the CS DIP Qualified Settlement Fund trust.

**1.32** **"Trust Account"** means that account, to be managed by the Trustee, established to hold those funds payable to claimants who are minors at the time their Trust Claims are liquidated.

**1.33** **"Trust Agreement"** means that Liquidating Trust Agreement executed as of April 15, 2013 by and among the Debtors, the Trustee and the TAC, and that Qualified

Settlement Fund Trust Agreement executed as of April 15, 2013 by and among the Debtors, the Trustee and the TAC.

## SECTION II

## Introduction

2.1    **Purpose.**  This TDP has been adopted pursuant to the Trust Agreement and shall not affect any of the rights of the Settled Insurers, including under the Settlement and Release Agreement entered into on [DATE] between the Trust and the Insurers (as defined therein).  It is designed to treat all holders of Trust Claims equitably by setting forth procedures for processing and paying all Trust Claims on an impartial basis, with the intention of paying each claimant an individual share on the basis of the proportional value of his or her Trust Claim.  All payments made to holders of Trust Claims are intended to compensate claimants for damages related to personal injuries, including bodily injury, and related mental consequences.  These payments are not intended to compensate holders of Trust Claims for lost wages or present or future medical or dental expenses.

2.2    **Interpretation.**  Nothing in this TDP shall be deemed to create a substantive right for any claimant.

## SECTION III

## Overview

3.1    **Claims Liquidation Procedures.**  All claimants holding a Trust Claim must file the Trust Claim with the Trust in accordance with the proof of claim provisions of Section 5.1(a) and Section 5.1(b) below.  Upon filing of the Trust Claim, the Trust Claim shall be processed, liquidated and paid as set forth below.  The Trust shall take all reasonable steps to resolve Trust Claims as efficiently and expeditiously as possible.

**3.2** **Resolution of Trust Claims.**  The Trust shall liquidate, under the Review Process, all Trust Claims that satisfy the Treatment Criteria.  The Liquidated Trust Claim Amount of a Trust Claim is dependent on the claimant satisfying the Treatment Criteria.

**3.3** **Resolution of Extraordinary Claims.**  A claimant may establish an Extraordinary Claim if he or she satisfies the Treatment Criteria, and further demonstrates the applicability of one or more Qualifying Events.  The Liquidated Extraordinary Claim Amount of an Extraordinary Claim is dependent on the claimant's qualifying Treatment Categories and the applicable Qualifying Events.

The Treatment Criteria, Treatment Categories, and Qualifying Events have all been selected and derived with the intention of achieving a fair allocation of the assets held by the Trust as among the claimants in light of the best information available, considering the rights that the claimants would have in the relevant tort system absent the Debtors' bankruptcies.

## SECTION IV

## TDP Administration

**4.1** **TAC.**  Pursuant to the Plan and the Trust Agreement, the Trust and this TDP shall be administered by the Trustee in consultation with the TAC, which represents the interests of holders of present Trust Claims against the Trust, pursuant to Section 8.2 of the Trust Agreement.  The Trustee shall consult with the TAC on such matters as are provided below and in Section 8.7 of the Trust Agreement.  The Trustee shall obtain the consent of the TAC on any amendments to this TDP pursuant to Section 8.1 below, and on such other matters as are otherwise required below and in Section 8.7 of the Trust Agreement.  The initial members of the TAC are identified in the Trust Agreement.

- xlix -

**4.2    Consent and Consultation Procedures.**  In those circumstances in which consultation or consent is required, the Trustee will provide written notice to the TAC of the specific amendment or other action that is proposed.  The Trustee will not implement such amendment or take such action unless and until the parties have engaged in the Consultation Process described in Section 8.7(a) of the Trust Agreement, or the Consent Process described in Section 8.7(b) of the Trust Agreement, respectively.

## SECTION V

## Resolution of Claims

**5.1 Processing and Payment of Trust Claims**.

**5.1(a)  Proof of Claim Deadline.**  All Trust Claims must be evidenced by a proof of claim form and required supporting documentation.  All proofs of claim and supporting documentation must be submitted by the Claim Deadline.  Trust Claims that are not evidenced by a properly-completed proof of claim form and all required supporting documentation at the Claim Deadline will not be entitled to compensation under this TDP.  Notwithstanding the above, the Trust <u>may</u>, at its discretion, permit holders of timely-filed Trust Claims the opportunity to correct or modify their submissions to correct defects, as detailed in Section 5.1(b) below.  Also notwithstanding the above, the Trust <u>may</u>, in its discretion, permit a late-filed Trust Claim to be processed and paid if the Trustee determines that the circumstances justify such a late-filed Trust Claim and the late Trust Claim will not materially delay the resolution of timely-filed Trust Claims.

**5.1(b)  Correcting and/or Modifying Trust Claims.**  In the event that a claimant submits a timely Trust Claim without properly completing the proof of claim form or without all necessary supporting documentation, the claimant may, within 30 days of notice of the deficient

- 1 -

submission by the Trustee, correct the noted deficiency and re-submit the Trust Claim. If the deficiency is corrected in the re-submitted Trust Claim, the Trust Claim shall be considered to have been timely filed.

**5.1(c) Processing of Trust Claims.** The Trust will review and process all Trust Claims for which there is a proof of claim form submitted by the Claim Deadline. The Trust shall assign each proof of claim form an identifying number, which identifier will be used on all subsequent correspondence between the Trust and the claimant, including correspondence regarding payment of the Trust Claim. A copy of the required claim form is attached as Exhibit 1 hereto.

**5.1(d) Processing of Extraordinary Claims.** Within 180 days from the date that the Trust approves a Trust Claim for payment, as described in Section 5.1(e)(2), the claimant may assert an Extraordinary Claim by completing and submitting a proof of claim form for an Extraordinary Claim. The extraordinary claim form shall require the claimant to: (i) identify his or her proof of claim number relating to the Trust Claim; (ii) specify which Qualifying Events are applicable to the Extraordinary Claim; and (iii) submit all supporting documentation required to establish the applicability of the Qualifying Events, as described further in Section 5.3 below. A copy of the proof of claim form for an Extraordinary Claim is attached as Exhibit 2 hereto.

**5.1(e) Payment of Trust Claims.**

**5.1(e)(1) Claimant Payment Fund.** All Trust Claims shall be paid from the Claimant Payment Fund. The Claimant Payment Fund shall be comprised of the settlement amount the Trust receives from the Settled Insurers, less (i) reasonable fees and expenses incurred by the Trust, including attorneys' fees owed by the Trust to its counsel for pursuing and settling the Coverage Litigation (as defined in the Trust Agreement), preparing and seeking

approval of this TDP and any settlement agreement with the Settling Insurers, and notifying potential claimants about the TDP; (ii) the Trustee's annual compensation and expenses; (iii) out-of-pocket expenses of the TAC; (iv) a reasonable reserve for future Trust fees and costs of processing and paying Trust Claims; and (v) the Extraordinary Injury Fund. To the extent feasible, the Trustee shall pay future Trust fees and costs from the Trust Account investment income.

**5.1(e)(2)  Payment Process for Trust Claims.**  The Liquidated Trust Claim Amount of a Trust Claim shall be calculated according to the following process:  First, within 75 days of the Claim Deadline, each Trust Claim (including those that have been permitted to cure any deficiencies pursuant to Section 5.1(b) above) shall be assigned a point value based on the applicable Treatment Categories, as described in section 5.2(c) below. Second, the point values associated with each qualifying Trust Claim shall be combined and totaled.  Third, each claimant shall be entitled to a proportional share equal to the point value of his or her Trust Claim divided by the total point value of all Trust Claims combined.  Fourth, each claimant's proportional share shall be multiplied by the amount of the Claimant Payment Fund to determine the Liquidated Trust Claim Amount.  Each claimant establishing a Trust Claim shall be entitled to a payment equaling the Liquidated Trust Claim Amount, less applicable Attorneys' Fees.

If the claimant is a minor at the time his or her Trust Claim is approved for payment, the Liquidated Trust Claim Amount, less applicable Attorneys' Fees, shall be placed into the Trust Account and paid upon the claimant's eighteenth birthday, as described in Section 5.1(e)(6) below.

**5.1(e)(3)  Payment Process for Extraordinary Claims**.  The Liquidated Extraordinary Claim Amount shall be calculated according to the following process: First, the Liquidated Trust Claim Amount shall be established as described in Section 5.1(e)(2) above. Second, for each applicable Qualifying Event, the claimant shall be entitled to receive the Associated Claim Value, as outlined in Section 5.3 below.  Third, the Liquidated Trust Claim Amount and all Associated Claim Values shall be totaled to determine the Liquidated Extraordinary Claim Amount.  Each claimant establishing an Extraordinary Claim shall be entitled to a payment equaling the Liquidated Extraordinary Claim Amount, less applicable Attorneys' Fees.  If the total amount of payments for Extraordinary Claims calculated in this manner exceeds $1 million, than each Extraordinary Claim payment shall be proportionally reduced such that the total amount does not exceed $1,000,000.

If the claimant is a minor at the time his or her Extraordinary Claim is approved, the Extraordinary Trust Claim Amount, less applicable Attorneys' Fees, shall be placed into the Trust Account and paid upon the claimant's eighteenth birthday, as described in Section 5.1(e)(6) below.

**5.1(e)(4)  Unused Amounts in Extraordinary Injury Fund.**  The balance of any unused amounts in the Trust's Extraordinary Injury Fund, if any, shall be allocated back to all claimants who assert a qualifying Trust Claim, based on the qualifying claimants' pro rata share of the Claimant Payment Fund.  Counsel for claimants shall also receive a pro rata portion of their Attorneys' Fees, as described in Section 5.1(e)(5)(iii) below.

**5.1(e)(5)  Payment of Attorneys' Fees.**

**5.1(e)(5)(i)  Attorneys' Fees Entitlement.**  Counsel for claimants shall be entitled to receipt of their Attorneys' Fees, which shall be paid from the Liquidated Trust

Claim Amount, the Liquidated Extraordinary Claim Amount, or both, as applicable. However, notwithstanding any contractual arrangement between counsel and claimant to the contrary, the incurred fees portion of such Attorneys' Fees shall be no more than the applicable statutory cap for counsel representing claimants holding Pre-Notice Trust Claims, and no more than 15% of the Liquidated Trust Claim Amount or the Liquidated Extraordinary Claim Amount for counsel representing claimants holding Post-Notice Trust Claims.

**5.1(e)(5)(ii) Payment Process for Trust Claims.** Within 30 days of the Trust's determination of the Liquidated Trust Claim Amount for any particular Trust Claim, the Trust shall remit payment of Attorneys' Fees to counsel for the claimant, subject to the payment caps described in section 5.1(e)(5)(i) above.

**5.1(e)(5)(iii) Payment Process for Extraordinary Claims.** Within 30 days of the Trust's determination of the Liquidated Extraordinary Claim Amount for any particular Extraordinary Claim, the Trust shall remit payment of Attorneys' Fees to counsel for the claimant, subject to the payment caps described in section 5.1(e)(5)(i) above. To the extent that counsel are entitled to additional Attorneys' Fees in connection with payment increases on Trust Claims associated with unused funds in the Extraordinary Injury Fund, such additional fees shall be paid at the same time as Attorneys' Fees related to an Extraordinary Claim.

**5.1(e)(5)(iv) Specification in Proof of Claim Form.** As described in Section 5.1(c) above, each claimant must, when completing the proof of claim form for his or her Trust Claim, specify whether he or she is represented by counsel, provide such counsel's contact information, and include the following information regarding the counsel's incurred Attorneys' Fees: (1) a description of the agreement between the claimant and claimant's

counsel concerning the counsel's recoverable attorneys' fees ; (2) whether, under such agreement, the counsel's recoverable fees are based upon the claimant's gross recovery from the Trust or upon the claimant's net recovery after the deduction of counsel's incurred expenses; and (3) the total dollar amount of the counsel's incurred expenses. The Trust's obligation to pay any portion of a claimant's Attorneys' Fees is contingent on receipt of the foregoing information.

### 5.1(e)(6) Trust Account.

**5.1(e)(6)(i) In General.** In the event that the Trust remits payment on a Trust Claim or on an Extraordinary Claim to a claimant who is a minor, the associated Liquidated Trust Claim Amount or Liquidated Extraordinary Claim Amount, less Attorneys' Fees, will be transferred to the Trust Account to be managed by the Trustee.

**5.1(e)(6)(ii) Investment of Trust Account Funds.** The Trustee is entitled to employ advisors to assist in the management and investment of the amounts held in the Trust Account. The reasonable costs and fees incurred by such investment advisors shall be paid, as agreed by the Trustee, from the investment income produced.

**5.1(e)(6)(iii) Payment to Claimants.** Upon the claimant's eighteenth birthday, he or she shall receive a payment amount equal to the Liquidated Trust Claim Amount, plus the Liquidated Extraordinary Claim Amount, if applicable, less applicable Attorneys' Fees (which will already have been paid to such claimant's counsel pursuant to Section 5.1(e)(5) above), plus the interest accrued on the remaining Liquidated Trust Claim Amount, the Liquidated Extraordinary Claim Amount, or both, after the expenses associated with managing the Trust Account have been paid.

**5.1(e)(7) Claimant Change of Address.** Following the submission of a proof of claim form, if the address associated with a proof of claim changes, such claimant shall

Case 3:10-cv-00743   Document 372-1   Filed 06/26/15   Page 56 of 64 PageID #: 14440

submit a change of address form to the Trustee (via the Trustee's website or by mail). Until the Trustee receives such change of address notice, the Trustee is entitled to use the last known address on file for the claimant for all purposes.

**5.1(e)(8) Unclaimed Funds.** If, after a period of sixty (60) days the Trustee has attempted to, but is unable to deliver payment to the claimant address on file, the Trustee is entitled to turn the payment amount over to the Texas unclaimed property fund and register such funds in the name of the claimant.

**5.2 Review Process for Trust Claims.**

**5.2(a) In General.** The Trust's Review Process is designed to provide an expeditious, efficient and inexpensive method for liquidating all Trust Claims. The Review Process is intended to provide qualifying claimants a fixed payment on the basis of each claimant's treatment history. In its Review Process, the Trust shall determine whether the Trust Claim described in each proof of claim form meets the Treatment Criteria, and if so, which Treatment Categories, if any, apply.

**5.2(b) Treatment Criteria.** For all Trust Claims, each claimant shall submit a proof of claim form. The proof of claim form shall require the claimant to:

      i.   specify which Treatment Categories are applicable to each Procedure for which the claimant seeks to assert a Trust Claim;

      ii.   provide relevant portions of the claimant's dental record from any applicable Dental Clinic falling between February 1, 2000 and December 1, 2010 (the "Records") showing the Procedure(s) for which the claimant seeks to assert a Trust Claim;

      iii.   to the extent possible, identify the location, in the Records, of the

Procedures for which the claimant seeks to assert a Trust Claim;

iv.   provide the opinion of a Qualified Dentist certifying that at least some aspect of the Procedures performed on the claimant at a Dental Clinic, for which such claimant seeks to assert a Trust Claim, did not meet the applicable standard of care;

v.    release any Trust Claims, known or unknown, that such claimant has asserted or may be entitled to assert against the Settled Insurers;

vi.   acknowledge that any Trust Claims, known or unknown, that such claimant has asserted or may be entitled to assert against any Dental Clinics, Clinic Dentists who provide a sworn statement that they in good faith believe they have or had a right to coverage under any of the Policies, or related Entities insured by the Settled Insurers are rendered non-recourse as provided in Section 4.17 of the Plan;

vii.  consent to the release of any Claim against the Liquidating Trust pursuant to HIPPA or related statutes for the release of the claimant's medical records that may be necessary to process the Trust Claim;

viii.  if the claimant is represented by counsel, identify such counsel's contact information and the terms of such counsel's payment arrangement with the claimant and complete the counsel certification, if the representation meets the Represented by Counsel criteria; and

ix.   provide any such additional information as the claim form may require.

In no case may a Trust Claim be asserted by any person other than a patient of a Dental Clinic, including by parents, guardians or other individuals that may seek to assert a Trust

- lvii -

Claim on behalf of a patient.

        **5.2(c)  Treatment Categories**.  As set forth in Section 5.2(b) above, each claimant must demonstrate the applicability of one or more Treatment Categories.  The ten qualifying Treatment Categories and their associated point assignments are detailed in the chart below.  Treatment criteria are applied separately for each visit to a Dental Clinic.  Each claimant may assert a claim for multiple visits, and points awarded for each such visit shall be cumulative. A claimant may receive multiple point allocations for any one Treatment Category, where such claimant establishes that the treatment/procedure criteria for the Treatment Category applied on more than one occasion.

| Treatment Category | Points for Pre-Notice Claimants | Points for Post-Notice Claimants | Treatment/Procedure Criteria |
|---|---|---|---|
| Category 1 | 1.3 points | 0.91 point | (1) Restraint used; (2) Procedures performed; (3) no local anesthesia used during the Procedures; and (4) no nitrous oxide used during the Procedures. |
| Category 2 | 1.2 points | 0.84 point | (1) Restraint used; (2) Procedures performed; (3) no local anesthesia used during the Procedures; and (4) nitrous oxide used during the Procedures. |
| Category 3 | 1.0 point | 0.70 point | (1) Restraint used; (2) Procedures performed; (3) local anesthesia used during the Procedures; and (4) no nitrous oxide used during the Procedures. |
| Category 4 | 0.9 point | 0.63 point | (1) Restraint used; (2) Procedures performed; (3) local anesthesia used during the |

- lviii -

| | | | |
|---|---|---|---|
| | | | Procedures; and (4) nitrous oxide used during the Procedures. |
| Category 5 | 0.8 point | 0.56 point | (1) Restraint used; and (2) no Procedures performed. |
| Category 6 | 0.5 point | 0.35 point | (1) Procedures Performed; (2) no local anesthesia used during the Procedures; and (3) no nitrous oxide used during the Procedures. |
| Category 7 | 0.4 point | 0.28 point | (1) Procedures Performed; (2) no local anesthesia used during the Procedures; and (3) nitrous oxide used during the Procedures. |
| Category 8 | 0.2 point | 0.14 point | (1) Procedures Performed; (2) local anesthesia used during the Procedures; and (3) no nitrous oxide used during the Procedures. |
| Category 9 | 0.1 point | 0.07 point | (1) Procedures Performed; (2) local anesthesia used during the Procedures; and (3) nitrous oxide used during the Procedures. |
| Category 10 | 0.05 point | 0.035 point | (1) Single tooth extraction only; and (2) no local anesthesia used during the Procedure. |

**5.3    Extraordinary Claim Review Process.**  Within 180 days from the date that the Trust approves payment on a Trust Claim, the claimant may assert an Extraordinary Claim by completing and submitting the extraordinary claim form.  A claimant making such an assertion

must demonstrate the applicability of one or more Qualifying Events associated with one or more of the Treatment Categories, as described below.  Qualifying Events are applied separately for each visit by a claimant to a Dental Clinic.  Each claimant may assert a claim for multiple visits to one or more Dental Clinics, where such claimant establishes that a Qualifying Event occurred on more than one visit.  Each Qualifying Event increases the value of the claimant's Trust Claim by the amount of the Associated Claim Value; however, the maximum percentage a claimant may recover on an Extraordinary Claim is 50% of such claimant's Liquidated Trust Claim Amount.  When asserting an Extraordinary Claim, the claimant must provide documentation supporting each listed Qualifying Event.  The costs related to processing Extraordinary Claims shall be deducted from the Extraordinary Injury Fund.

| **Qualifying Event** | **Associated Claim Value** |
|---|---|
| The patient was admitted to a hospital for treatment of an abscess or similar infection within six months of receiving dental care at Small Smiles | 50% of Liquidated Claim Amount |
| Dental treatment under general anesthesia by a non-Small Smiles doctor within six months of treatment at a Small Smiles clinic | 50% of Liquidated Claim Amount |
| Psychological counseling related to treatment at a Small Smiles clinic within six months of treatment at Small Smiles clinic | 50% of Liquidated Claim Amount |
| Dental treatment under conscious sedation by a non-Small Smiles doctor within twelve months of treatment at a Small Smiles clinic | 25% of Liquidated Claim Amount |
| Speech therapy related to treatment at a Small Smiles clinic within twelve months of treatment at Small Smiles clinic | 25% of Liquidated Claim Amount |
| Loss of a permanent tooth, not related to an accident or pre-existing abscess, within twelve months of the time such tooth was treated at a Small Smiles | 25% of Liquidated Claim Amount |

| | |
|---|---|
| Medical or dental treatment on an outpatient basis or in an emergency room, related to treatment at a Small Smiles clinic within six months of treatment at Small Smiles clinic | 25% of Liquidated Claim Amount |

## SECTION VI

## Claims Materials

**6.1     Content of Claims Materials.**

**6.1(a)   Trust Claims.**  The claims materials for Trust Claims shall include a copy of this TDP, such instructions as the Trustee shall approve, a detailed proof of claim form, and an extraordinary claim form.  The Trust may obtain claims information from a claimant or from a claimant's attorney, in electronic format, or, if not possible, in paper format.

**6.1(b)   Revision of Claim Forms.**  With the consent of the TAC, the Trustee may revise the proof of claim form or the extraordinary claim form.  The Trustee may, in his sole discretion, accept claimant submissions in a format that differs from the claim form, provided that the content of the information provided is the substantial equivalent to that sought on the claim form.

**6.1(c)   Withdrawal of Trust Claims**.  A claimant can withdraw a Trust Claim at any time prior to the Claim Deadline upon written notice to the Trust and file another such Trust Claim subsequently without affecting the status of the Trust Claim.

## SECTION VII

## General Guidelines for Liquidating and Paying Trust Claims

**7.1     Showing Required.**  To establish a valid Trust Claim, a claimant must meet the requirements set forth in this TDP, including by supplying all of the information requested on the claim form and executing the associated releases.

**7.2     Credibility of Evidence for Extraordinary Claims.**  Before making any payment to a claimant on an Extraordinary Claim, the Trust must have reasonable confidence that the evidence provided in support of the Extraordinary Claim is credible and consistent with recognized dental standards.

**7.3     Interest.**  Interest shall be payable on any Trust Claim only to the extent that it accrues between the date that the Trust approves such claim for payment and the date of the claimant's eighteenth birthday.  In that circumstance, interest shall be payable as described in Section 5.1(e)(6) above.

**7.4     Third-Party Services**.  Nothing in this TDP shall preclude the Trust from contracting with a claims processing organization to provide services to the Trust so long as decisions about the categorization and liquidated value of Trust Claims are based on the relevant provisions of this TDP, including the Treatment Criteria, Treatment Categories, and Qualifying Events set forth above.

**7.5     Medicare Act Obligations.**  To the extent such obligations exist, the Trustee shall be responsible for any reimbursement and repayment obligations under the Medicare Act for claim-related conditional payments made under Medicare Part A, B, C, and D or any state's Medicaid statute prior to making any payment on a Trust Claim or an Extraordinary Claim.  To the extent such obligations exist, the Trustee also shall be responsible for any reporting or financial obligations imposed by the Medicare Act or any state's Medicaid statute in connection with any payment to a claimant on a Trust Claim or an Extraordinary Claim.

Case 3:10-cv-00743   Document 372-1   Filed 06/26/15   Page 63 of 64 PageID #: 14447

## SECTION VIII

### Miscellaneous

**8.1** **Amendments**.  Except as otherwise provided herein, the Trustee may amend, modify, delete, or add to any provisions of this TDP (including amendments to conform this TDP to advances in scientific, medical, or dental knowledge or other changes in circumstances), provided it first obtain the consent of the TAC**.**

**8.2** **Severability.**  Should any provision contained in this TDP be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this TDP.  Should any provision contained in this TDP be determined to be inconsistent with or contrary to any Debtor's obligations to any insurance company providing insurance coverage to such Debtor in respect of claims based on the provision of dental services by Debtor or any Entity for which the Debtor has liability, the Trust with the consent of the TAC may amend this TDP and/or the Trust Agreement to make the provisions of either or both documents consistent with the duties and obligations of such Debtor to said insurance company.

**8.3** **Governing Law.**  Administration of this TDP shall be governed by, and construed in accordance with, the laws of the State of Texas.

Case 3:10-cv-00743   Document 372-1   Filed 06/26/15   Page 64 of 64 PageID #: 14448